Argued and submitted September 8, 1981, reversed and
remanded for new trial February 10, 1982

STATE OF OREGON,
*Respondent on Review,*

*v.*

AVIS FRANCIS DOUGLAS,
*Petitioner on Review.*

(CA 18550, SC 27810)

641 P2d 561

Joyce J. Cresswell, Oregon City, argued the cause and
filed the brief for petitioner.

Rudolph S. Westerband, Assistant Attorney General,
Salem, argued the cause for respondent. With him on the

brief were David B. Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

TANZER, J.

Lent, J., filed a specially concurring opinion.

## TANZER, J.

Defendant appeals her conviction of theft. She assigns as error a trial court order precluding her own testimony of alibi due to her noncompliance with statutory requirements for such evidence. The Court of Appeals upheld the trial court ruling, citing *State v. Wardius,* 6 Or App 391, 487 P2d 1380, *rev den* (1971), *rev'd in part* 412 US 470, 93 S Ct 2208, 37 L Ed 2d 82 (1973). We accepted her petition for review by which she contended that the sanction was impermissible under the Oregon and the federal constitutions. We find, however, that the statute is dispositive.

### I. District Court Proceedings

The charge of theft was based upon evidence that defendant obtained a tank of gasoline and drove away without paying for it. The intended defense was alibi. Immediately prior to trial, the prosecutor moved to exclude all evidence of alibi because the defendant had failed to file and serve a notice of intent to present an alibi defense as required under ORS 135.455. Defense counsel represented that she had prepared a notice in proper form and caused it to be delivered. Although the prosecutor never received it, he accepted that representation. The notice is not in the record but, because of the statements of counsel, we accept as fact that a notice in proper form was delivered to the district attorney as required by the statute. The notice indicated that the defendant and one other witness would testify that defendant was at her place of employment at the time of crime. Defense counsel stated that the person listed on the notice was not a witness after all and she did not intend to call that person. She then stated that there was another witness whom she intended to call to support the same alibi.

The trial court ordered that the defendant could not call its intended witness. Defense counsel acceded to the correctness of that ruling and it is not in issue. The trial court also ordered that the defendant was precluded from testifying as to her alibi. Under the ruling, she testified that she did not commit the crime and was not at the place of the crime, but she was not allowed to testify affirmatively that she was elsewhere. Defendant testified

within the limits of the court's order and it is that order of preclusion which is in issue in this appeal.

## II. Application of ORS 135.455

It is elementary that we will not reach constitutional issues to decide a case which can be decided on statutory grounds. Therefore we first examine the controlling statute, ORS 135.455, which provides:

"(1)  If the defendant in a criminal action proposes to rely in any way on alibi evidence, he shall, not less than five days before the trial of the cause, file and serve upon the district attorney a written notice of his purpose to offer such evidence, which notice shall state specifically the place or places where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence. If the defendant fails to file and serve such notice, he shall not be permitted to introduce alibi evidence at the trial of the cause unless the court for good cause orders otherwise.

"(2)  As used in this section 'alibi evidence' means evidence that the defendant in a criminal action was, at the time of commission of the alleged offense, at a place other than the place where such offense was committed."

The only respect in which the notice was arguably deficient was that it failed to

"* * * state specifically * * * the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence."

■ ■   ORS 135.455 does not impose upon a defendant who intends to offer alibi evidence a general obligation to disclose to the state all evidence as to the truth of the alibi. It requires only that the defendant identify those persons upon whom she intends to rely as witnesses at trial. If other witnesses exist, but the defendant does not intend to rely upon them, the defendant is under no statutory duty to inform the state of their identity or location.

■   In this case, defendant appeared for trial having given notice identifying herself and another witness to her alibi. She did not call the other person. She belatedly expressed her desire to call an unlisted witness, but the court did not allow her to do so. Thus, the other two

potential witnesses are immaterial. The situation boils down to this: defendant complied with ORS 135.455 by giving notice that she intended to rely on her own testimony, but she was barred from giving it. There was no statutory basis for imposition of a sanction precluding defendant from giving her own testimony regarding alibi for which she had given notice. Therefore, the sanction was erroneously imposed and the case must be reversed and remanded for a new trial absent the sanction.[1]

Reversed and remanded for a new trial.

**LENT, J.,** specially concurring.

Because I disagree with the majority's holding that defendant did comply with ORS 135.455, I am unable to join in the majority's opinion. ORS 135.455 provides:

"(1)  If the defendant in a criminal action proposes to rely in any way on alibi evidence, he shall, not less than five days before the trial of the cause, file and serve upon the district attorney a written notice of his purpose to offer such evidence, which notice shall state specifically the place or places where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence. If the defendant fails to file and serve such notice, he shall not be permitted to introduce alibi evidence at the trial of the cause unless the court for good cause orders otherwise.

"(2)  As used in this section 'alibi evidence' means evidence that the defendant in a criminal action was, at the time of commission of the alleged offense, at a place other than the place where such offense was committed."

Defendant failed in two important particulars to comply with the statute: (1) She never filed any written notice of her purpose to offer alibi evidence, and the majority concedes that she did not. (2) From what record we have as to the contents of the notice which the prosecutor offered to

---

[1] Justice Lent concurs on the basis of a learned opinion which concludes that the court may never impose a sanction of restriction of a defendant's testimony. Because of our statutory resolution of the case, we do not reach the constitutional issues which he examines. Nor do we find it necessary to adopt the absolute rule which he proposes. *Cf. United States v. Noble,* 422 US 225, 95 S Ct 2160, 45 L Ed 2d 141 (1975).

stipulate was served on his office, the notice failed to "state specifically the place where" she claimed to have been at the time of the commission of the theft. The majority correctly points out that the prosecutor knew that she would claim that she was at work, but nowhere is there anything in the record to show that the prosecutor was advised as to the name or location of her place of work. The prosecutor claimed that it was that very information which was necessary to afford a basis for investigation of her defense of alibi. I quote the prosecutor's words:[1]

---

[1] The quotation is from a colloquy concerning the prosecutor's pre-trial motion to prevent defendant from offering evidence of alibi. Relevant portions of the colloquy follow:

"THE COURT: Any preliminary matters?

"THE STATE: Yes, Your Honor, the State moves *in limine* for a motion to limit evidence in this case, that the Court exclude at this time from evidence any and all evidence at trial, also in mention during voir dire and opening statement or argument, of the nature of an alibi defense. There's been an oral communication on July 15, 1980, which was yesterday, between this attorney and Miss Cresswell [defendant's trial counsel] and Mr. Bailey of our office *to the effect that defendant will interpose the defense that this was not her that she was at work. The defendant has failed to comply with the appropriate statute in this case which is ORS 135.455.* There has been *no filing* or serving upon the District Attorney *of a written notice* of purpose to offer an alibi evidence. There has been no specific statement of where the defendant claims to have been at the time of the alleged offense. Further no indication of witnesses upon whom defendant intends to rely. *For failure to comply with the requirements of that statute the court should and must,* I believe under the appropriate case law, *exclude from evidence any and all mention of such an alibi defense* and rely on *State v. Pennington,* 28 Or App 331, a 1977 case * * *.

" * * * * *

"THE STATE: * * * The trial court in that case properly refused to admit evidence of that alibi and that decision of the trial court was affirmed by the Court of Appeals. In this case there has been apparently no compliance, no attempted compliance whatsoever with the appropriate statute.

"THE COURT: Miss Cresswell?

"DEFENSE COUNSEL: Your Honor, the alibi defense notice was filed with the District Attorney's office. I thought it was filed. I left it with my secretary to be filed and I was told that it was filed and I don't know what happened to it. Unfortunately the one that was filed, or that I thought was filed, was not — did not give information with regard to any witness that we do intend to call. It was the wrong witness. * * * I believe that the statute, however, will permit the defendant herself to give evidence as to where she was on that day and the statute only forbids us to call any witness other than the defendant who we might have been able to tell the State about in advance. It does not forbid us to let the defendant give her version of what was going on that day. To read the statute otherwise would require that we give the State notice of whether or not the defendant intended to testify and that certainly is not anything that's required under our Constitution or our laws. The notice that we gave would not have availed anyway and whether or not it arrived in

the District Attorney's office I'm not sure. At this time we require — we request only that the defendant be allowed to testify if she so chooses, and we don't feel the statute forbids us doing that even though we've not given notice of that possibility.

"THE STATE: I don't believe that's the correct interpretation of that statute. * * * I believe that the statute's very clear and indicates the defendant has to provide notice of where that person, *the defendant,* in this case a female, claims to have been and *has to provide those details* regardless of whether or not that infringes her so called right of secrecy as to whether or not she'll testify. She simply has to allow, following that statute, allow the State some opportunity to investigate her claim. *If she claims, as apparently is the case in this oral communication and the notes in the file indicate that she says she was at work. The requirement is that she provide us the information as to where that is so that the State can investigate that and provide its own witnesses.* * * * But I don't think that contravenes any constitutional right of this witness to lay [sic] in the weeds and surprise somebody at trial and it by no means allows her to lay [sic] back and testify herself. The statute's very clear it controls the testimony of the defendant as well as the testimony of any other witnesses.

" * * * *

"THE STATE: * * * It seems to me that by her own admission the notice itself was defective, it failed to comply with the statute. So I'm not trying to be a stickler about whether or not that was served on our office. We have problems I know of getting documents in files and *if that was served within five days before and she can represent that to the court I'd stipulate to it.* I'm not trying to fight that particular issue. I do think that *if a notice was defective, however, my motion in limine should be granted nonetheless.*

" * * *

"THE COURT: All right. It's the court's feeling that it is in the nature of a discovery statute, quite closely allied as a matter of fact. That the constitutional right to remain silent or to an election to testify are not abridged by this statute. What they're saying is if you do testify and you depend upon that defense, notice must be given of it. Whether it is by witness or whether it be by the defendant. It doesn't require an election, it requires a notice that the defendant may choose to testify and if he or she does that that testimony can well include alibi, but I don't think there's any commitment one way or the other or any limitation on the right to remain silent or to testify at the choice of the defendant. It does give notice as to what he or she might say if the election is made to testify. I feel that that is within the constitutional power that is the right to demand discovery in the nature of an affirmative defense and of witnesses being called for the purposes that underlie the discovery statutes which are equally applicable to 135.455. It would therefore be the ruling of the court that *the defendant will be precluded from offering testimony relating to defense of alibi having failed to give notice properly and in my view, at least, not being an abrogation of constitutional rights."* (Emphasis added.)

I would observe that, contrary to the trial court's suggestion, alibi is not an affirmative defense as defined by ORS 161.055(2). The state has the burden of disproving this defense; the defendant does not have a burden of proving it. *Cf.* a case antedating the statute, *State v. Yielding,* 238 Or 419, 422, 395 P2d 172, 173 (1964); Uniform Jury Instructions 405.01.

"If she claims, as apparently is the case in this oral communication and the notes in the file indicate that she says she was at work. The requirement is that she provide us the information as to *where that is* so that the State can investigate that and provide its own witnesses." (Emphasis added)

I agree with the majority that we do not reach constitutional issues when we can dispose of a case on statutory grounds, but the record does not permit disposition on that basis in this case. Accordingly, we should reach and deal with one of defendant's claims of constitutional error.

The proper issue is whether preclusion of a defendant's own alibi testimony for failure to give the statutorily required notice of an alibi defense is a permissible sanction in light of defendant's "right * * * to be heard by himself" guaranteed by Article I, section 11 of the Oregon Constitution. I would hold that sanction to be constitutionally impermissible.

Defendant, petitioner before our court, was convicted on a charge of second-degree theft. She challenges a trial court ruling which barred her from testifying concerning an asserted alibi defense. The trial court ruled that she could not present this alibi defense because she had not complied with the notice provisions of ORS 135.455.

In the Court of Appeals and this court, petitioner attacked the preclusion sanction imposed under ORS 135.455 with several arguments based on the constitutions of the United States and of Oregon. I find that Article I, section 11, of the Oregon Constitution (hereinafter Section 11) resolves this case. Section 11 provides in pertinent part: "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself * * *." Though I draw on materials from other areas of constitutional criminal procedure, I confine this decision to the question whether the preclusion sanction under ORS 135.455 is consistent with this provision of our state constitution.

Thus, I specifically do not address any question as to the validity of the preclusion sanction when applied to

witnesses other than the defendant;[2] I do not address the question of the alibi notice requirement as a possible violation of the Oregon constitutional right against self-incrimination;[3] and I do not address the possible conflict between ORS 135.455 and the compulsory process and confrontation provisions of either the United States Constitution or the Oregon Constitution.[4]

## I. THE FACTS

The prosecution's witnesses testified that on the night of November 8, 1979, a woman attempted to pay for a tank of gas at a Fastway gas station in Clackamas County by writing a check. Gas station attendants told her that they could not accept her check, but that she could leave and get cash if she left her driver's license with them. The woman gave the attendants an identification card and left, but never returned to pay for the gas. The identification card was the defendant's and bore her photograph, and at trial the gas station attendants identified the defendant as the woman who gave them the card.

Defendant intended to assert a defense of alibi and to testify by way of alibi that she was at work on the night of November 8, and to offer a co-worker as a corroborating witness.[5] She was not permitted to present this alibi

---

[2] I note that authority on this point is divided. Some courts hold that no constitutional rights are infringed by the preclusion of alibi witnesses. *State v. Smith,* 88 N Mex 541, 543 P2d 834 (1975); *State v. Dodd,* 101 Ariz 234, 418 P2d 571 (1966); *State v. Stump,* 254 Iowa 1181, 119 NW2d 210 (1963); *see also Johns v. Perini,* 440 F2d 577 (6th Cir 1971) (applying Ohio law). More recent cases recognize that the preclusion of witnesses presents serious questions under the compulsory process clause of the Sixth Amendment and the more general due process right to present a defense. *Hackett v. Mulcahy,* 493 F Supp 1329 (DC NJ 1980); *State v. Grant,* 10 Wash App 468, 519 P2d 261 (1974); *and see United States v. Davis,* 639 F2d 239 (5th Cir 1981); *Ronson v. Commissioner of Corrections of State of New York,* 604 F2d 176 (2d Cir 1979) (preclusion of witness permitted only if nondisclosure prejudiced the prosecution and defendent is personally responsible for nondisclosure). *See also* Note, *The Preclusion Sanction: A Violation of the Constitutional Right to Present a Defense,* 81 Yale L J 1342 (1972); Westen, *Compulsory Process,* 73 Mich L Rev 71 (1974).

[3] *See* Or Const, Art I, § 12; *cf. Williams v. Florida,* 399 US 78, 90 S Ct 1893, 26 L Ed 2d 446 (1970).

[4] *See* Or Const, Art I, § 11; *cf. State v. Wolfe,* 273 Or 518, 528-29, 542 P2d 482, 487-88 (1975) (Denecke, J. concurring specially); *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967). *See also* note 2, *supra.*

[5] In the discussion of the state's motion to exclude alibi evidence, see note 1, *supra,* the defense counsel pointed out that the defendant's notice of alibi did not

defense because during pre-trial proceedings, the state moved to preclude all alibi witnesses and to bar the defendant from giving any testimony as to her alleged alibi. The prosecution contended that the defendant had failed to file and serve a notice of intent to present an alibi defense as required under ORS 135.455. Defense counsel represented to the trial court that she had left a notice of intent to raise the defense of alibi with her secretary and believed it had been sent. The prosecuting attorney, although willing to accept defense counsel's representation that the notice alibi was properly served, insisted that the notice was defective because it gave the wrong name for the corroborating witness and did not identify her place of work. See footnote 1, *supra,* and accompanying text. The prosecuting attorney argued that because of this defect, the defendant was precluded by ORS 135.455 from presenting an alibi defense. The prosecuting attorney did not specifically claim that the defective notice prejudiced the state or affected its trial preparation. The record shows clearly that the state was aware of the defendant's intent to raise an alibi. After discussion, relevant portions of which I set forth in footnote 1, *supra,* the trial court allowed the prosecution's motion.[6]

The effect of the trial court's ruling was that the defendant was permitted to take the stand and testify that she was not the woman who left the identification card at the gas station, that the identification card was hers, that she had lost it several months before the theft and that she had had female roommates at the time, including her sister, who bore a striking physical resemblance to her. Defendant was denied the opportunity to explain to the jury where she was that night, what she was doing, or otherwise detail her activities.

name the proposed corroborating witness, and conceded that the witness was properly excluded. Defendant does not pursue this issue on appeal, and, as stated at text accompanying note 2, *supra,* I do not address this question.

[6] I note that nowhere in the colloquy concerning the motion *in limine* did either counsel or the trial judge specifically refer to Article I, section 11, or to the defendant's right to be heard by herself. While the specific constitutional provision was not cited, both the parties and the trial court were aware that the subject under discussion was the defendant's right to testify, and both parties and the court were aware of the constitutional nature of the claim. I therefore consider the matter adequately preserved for our consideration. *Cf. State v. O'Neill,* 274 Or 59, 65, 545 P2d 97, 100 (1976); *Highway Commission v. Helliwell,* 225 Or 588, 591, 358 P2d 719, 721 (1961).

Defendant appealed her conviction, and the Court of Appeals' per curiam opinion was as follows:

> "Affirmed. *State v. Wardius,* 6 Or App 391, 487 P2d 1380 (1971), *rev'd in part* 412 US 470, 93 S Ct 2208, 37 L Ed 2d 82 (1973)."

51 Or App 576, 626 P2d 407 (1981). Because I conclude the court's reliance on *State v. Wardius,* 6 Or App 391, 487 P2d 1380 (1971), *rev'd in part* 412 US 470, 93 S Ct 2208, 37 L Ed 2d 82 (1973), requires attention to that decision, I have set forth the relevant portions of that opinion at some length in the margin.[7] We allowed defendant's petition for review, ORS 2.520, 291 Or 368 (1981), in order to decide whether the alibi notice statute, and specifically the statutory provision which makes preclusion of the defendant's alibi testimony the only prescribed remedy for noncompliance with the strict letter of the statute, offends Section 11. As stated above, I would do so.

---

[7] *State v. Wardius,* 6 Or App 391, 487 P2d 1380 (1971), states:

"Defendant next contends that since he is guaranteed the right to take the stand in his own behalf by our constitution (Oregon Constitution, Art. I, § 11), he has an absolute right to do so and, in so doing, to testify himself, as well, concerning alibi as well as any other relevant matter.

"Defendant confuses the right to testify with the requirement that he first comply with the notice requirement of the statute. * * * The legislature, by the enactment of Oregon Laws 1969, ch 293, p 500, now ORS 135.875 [subsequently renumbered ORS 135.455], saw fit only to require a defendant to give at least five days' notice of intent 'to rely in any way on alibi evidence.' The law does not deprive the defendant of his right to take the stand.

"The Wisconsin Supreme Court recently considered this claim under a similar statute, and said:

" ' * * * Assuming the right of a defendant under either or both state and federal constitutions to testify as a witness in his own behalf, it does not follow that such right outlaws any and all procedural requirements of conditions as to notice.

" 'When any witness takes the stand, he swears or affirms that he will tell the truth, the whole truth and nothing but the truth. What is constitutionally protected is the right of a defendant to testify truthfully in his own behalf. * * * [T]he defendant suffers no prejudice by the requirement of advance notice of intention to establish such fact [of alibi]. * * * These decisions, and the statute on which they are based, do not limit in any way the right of a defendant to testify truthfully in his own behalf. The condition of prior notice as to alibi testimony, like the test as to materiality and relevancy, does not invade the right of a defendant to testify in his defense.' *State ex rel Simos v. Burke,* supra, 41 Wis 2d at 136-38 [163 NW2d 177, 180-181 (1968)]."

6 Or App at 397-398, 487 P2d at 1383-1384.

This court denied review of the Court of Appeals decision in *Wardius.* Thus, this is the first occasion on which we consider this issue.

## II. THE DEFENDANT'S CONSTITUTIONAL RIGHT TO TESTIFY

A threshold question is whether the right to be heard by herself under Section 11 includes the right to testify. To decide this, I examine the history of this right, trying to discern what the drafters of the Oregon Constitution meant when they included this language in the Bill of Rights.

The language of Section 11 was copied from the Indiana Constitution of 1851.[8] That constitution copied the language of the earlier Indiana Constitution of 1816, which was in turn drawn from the early constitutions of Pennsylvania, Ohio, Tennessee, and Kentucky,[9] and language guaranteeing the accused the right to be heard is found in each of these[10] and is common to many of the early state constitutions.[11] At the time these early constitutions were

---

[8] C. Carey, A History of the Oregon Constitution 468 (1926); Palmer, *The Sources of the Oregon Constitution,* 5 Or L Rev 200, 201 (1926); Ind Const Art I, § 13 (1851) ("the accused shall have the right * * * to be heard by himself and counsel"); *see also* Ind Const Art I, § 13 (1816) ("in all criminal prosecutions, the accused hath a right to be heard by himself and counsel").

[9] Twomley, *The Indiana Bill of Rights,* 20 Ind L J 211, 212-213 (1945).

[10] Kentucky—Ky Const Art XII, * 10 (1792) ("the accused hath a right to be heard by himself and his counsel"); Ky Const Art X, § 10 (1799) ("the accused hath a right to be heard by himself and counsel"); Ky Const Art XIII, § 12 (1850) ("the accused hath a right to be heard by himself and counsel"); Ohio—Ohio Const, Art VIII, § 11 (1802) ("the accused hath a right to be heard by himself and his counsel"); Ohio Const Art I, § 10 (1851) ("the party accused shall be allowed to appear and defend in person and with counsel"); Pennsylvania—Pa Const Declaration of Rights § IX (1776) ("a man hath a right to be heard by himself and his counsel"); Pa Const Art IX, § 9 (1790) ("the accused hath a right to be heard by himself and his counsel"); Pa Const Art IX § 9 (1838) ("the accused hath a right to be heard by himself and his counsel"); Tennessee— Tenn Const Art XI, § 9 (1796) ("the accused hath a right to be heard by himself and his counsel"); Tenn Const Art I, § 9 (1834) ("the accused hath a right to be heard by himself and his counsel").

All of these constitutions and those cited in note 11 *infra* are reproduced in W. Swindler, Sources and Documents of United States Constitutions (11 volumes, 1973-1979).

[11] Though individual wordings vary, all of the following state constitutions contain language guaranteeing an accused's right to be heard: Alabama—Ala Const Art I, § 10 (1819) ("In all criminal prosecutions, the accused has a right to be heard by himself and counsel"); Arkansas—Ark Const Art II, § 11 (1836) ("the accused hath a right to be heard by himself and counsel"); Connecticut—Conn Const Art I, § 9 (1818) ("the accused shall have a right to be heard"); Delaware— Del Const Art I, § 7 (1792); ("the accused hath a right to be heard by himself and his counsel"); Florida—Fla Const Art I, § 10 (1838) ("the accused hath a right to

drafted, however, the right to be heard did not include the right to testify. Following the rules of the common law, American jurisdictions uniformly held that the defendant in a criminal trial was not competent to give sworn testimony.[12]

## A. *The Right to be Heard in English Law*

To discern the meaning of the right to be heard, we must look to the history of the criminal law in England. The key source for early English procedure is The Complete Collection of State Trials (T. Howell ed 1816) (hereinafter State Trials), on which the drafters of American state constitutions and the United States Constitution relied for their understanding of English legal procedures.[13] The accounts in the State Trials show that from the beginnings of the common law, the defendant's right to respond to criminal charges was an evolving matter. In early trials,

---

be heard, by himself or counsel, or both"); Maine—Me Const Art I, § 6 (1819) ("the accused shall have a right to be heard by himself and his counsel, or either, at his election"); Massachusetts—Mass Const Part I, Art XII (1780) ("every subject shall have a right * * * to be fully heard in his defence by himself, or his counsel at his election"); New Hampshire—N H Const Art I, § xv (1784) ("every subject shall have a right * * * to be fully heard in his defence by himself"); Rhode Island-RI Const Art I, § 10 (1842) ("the accused * * * shall be at liberty to speak for himself"); Texas—Rep of Tex Const, Declaration of Rights, § 6 (1836) ("the accused shall have the right of being heard, by himself or counsel, or both"); Tex Const Art I, § 8 (1845) ("the accused * * * shall have the right of being heard by himself or counsel, or both"); Vermont—Vt Const Ch I, § x (1777) ("a man hath a right to be heard, by himself and his counsel"); Vt Const Ch I, § xi (1786) ("a man hath a right to be heard by himself and his counsel"); Vt Const, Ch I, art x (1793) ("a person hath a right to be heard by himself and his counsel").

[12] Popper, *History and Development of the Accused's Right to Testify,* 1962 Wash U L Q 454-460; *Ferguson v. Georgia,* 365 US 570, 573-576, 81 S Ct 756, 758-760, 5 L Ed 2d 783, 786-787 (1961).

[13] Of the materials presented in The Complete Collection of State Trials (T. Howell ed 1816) (hereinafter State Trials), Professor Peter Westen notes in his article, *Compulsory Process,* 73 Mich L Rev 71 (1974), that it appears that Americans accepted the accounts in the ten-volume 1765 edition as accurate in forming their views of English criminal procedure. The State Trials were widely read and there was a copy of the 1765 edition in the Philadelphia library, which was used by the Constitutional Convention. The volumes are filled with *causes celebres* rather than typical cases, and later historians have argued persuasively that many of the accounts are embellished, inaccurate, and sometimes fictionalized long after the fact. They are a key source not for their actual accuracy, but for the accuracy which early Americans attributed to them in formulating laws. Americans drafting early constitutions, however, did not know this, and relied on the State Trials in forming their impressions of the laws of England and drafted constitutions which responded to these impressions. *See* Westen, *supra* at 93-94 & n 92.

the accused had few of the rights that we now regard as fundamental to criminal justice. He had no right against excessive bail or to a speedy trial, could be subjected to torture, could be required to incriminate himself at trial, was denied the assistance of counsel at all stages of the proceedings, could present no witnesses in his behalf, and was not permitted to give sworn testimony in his own defense.[14] From almost the earliest recorded English cases, however, the courts acknowledged that the defendant could speak in his own defense.

A very early case which shows that the accused did have a right to present his account of the facts is the *Articles of Accusation against Hubert de Burgh,* 1 State Trials 13 (1239). While the record is only a summary, it indicates that de Burgh was brought before the court, the charges were read to him, and he was allowed to answer them, in essence to speak freely.

The *Proceedings against William Sautre,* 1 State Trials 163 (1400), show a similar procedure. The charges were read to the accused and at his request he was provided with a copy of these and allowed time to prepare his response. On the appointed day, the accused appeared before the court, read a reply to the charges, and was then questioned orally, and was apparently free to (rather than compelled to) answer.

Moving from the fourteenth century to the sixteenth, we find the same procedure in effect. By this time, prosecution witnesses in the modern sense of the word were widely used in trials, although defense witnesses were still uncommon. Further, the rules of disqualification for interest were being applied. 2 Wigmore, Evidence § 575 at 804-05 (Chadbourn rev ed 1979). In *The Trial of John Fisher, Bishop of Rochester,* 1 State Trials 395 (1535), however, the record shows that the rules of disqualification did not prevent the defendant from making his case to the jury through his own unsworn statements. The defendant was brought before the court, the indictment was read, and the crown's evidence was produced. This was primarily the testimony of an informant. At the close of the informant's

---

[14] Westen, *supra* at 81-82; 2 Wigmore, Evidence § 575 (Chadbourn rev. 1979).

testimony, the bishop was allowed to freely challenge the informant's testimony both by addressing questions to him and by relating his own account of the events.

Other trials from this period indicate that this was the general practice: each prosecution witness testified and the defendant was then given an opportunity to respond to this testimony. *See, e.g., The Trial of Lord William Dacres,* 1 State Trials 407 (1535), and *The Trials of Queen Anna Boleyn.* 1 State Trials 409 (1536). The disability of the defendant was that he was not sworn, while witnesses for the crown were.

By the middle of the seventeenth century, the rules of disqualification for interest were firmly established in both civil and criminal cases. In criminal trials, however, the accused continued to plead his own cause, and his right to do so appears never to have been seriously disputed. Indeed, the controversy at this time was over his right to have counsel. The key fact which led to the idea that the defendant was not a competent witness was that he was not sworn. As Wigmore puts it:

> "[S]ince in criminal causes, the accused was not allowed to have counsel in felony cases * * *, his statements covered without distinction whatever he had to say of law, of evidence, and of argument. *In effect, he furnished evidence,* i.e., material which affected the jury's belief; *but he was not sworn, he had no standing as a witness, and in theory of the law he therefore gave no evidence."* (Footnotes omitted, emphasis added)

2 Wigmore, Evidence § 575 at 809 (Chadbourn rev ed 1979).

The authorities agree that by the mid-seventeenth century, the rule disqualifying interested persons from giving testimony was well established, having been accepted since about 1580. Yet the trials of this period show that the defendant, although not giving sworn testimony, continued to state his unsworn account to the jury. *Case of John Niven,* 8 State Trials 125 (1680), illustrates this practice. The defendant was allowed to examine each witness, and this examination often went beyond the bounds of modern cross-examination, so that, as Wigmore notes, the defendant was often effectively giving evidence throughout the trial. At the close of the prosecution's case, he was allowed to make a statement in his own defense.

In *The Trial of Dr. Oliver Plunket,* 8 State Trials 447 (1681), we have a virtual transcript of the proceedings. Acting without counsel, Dr. Plunket cross-examined the crown's witnesses, and then made his own answer in defense. This answer remained in the form previously seen, an unsworn oral reply. The court apparently expected the defendant to make a full and free answer and solicited this from him, specifically asking him, at 484, if he had anything to present to the jury. *See also, The Trial of George Busby,* 8 State Trials 525 (1681); *The Trial of William Hone,* 9 State Trials 571 (1683); *Trial of William Lord Russell,* 9 State Trials 577 (1683); *Trial of Algernon Sidney,* 9 State Trials 817 (1683).

The *Proceedings against Lord Simon Lovat,* 18 State Trials 529 (1746), show that this practice of allowing the defendant to speak continued even after the defendant had counsel. At the close of the prosecution's case, he was allowed to answer the factual evidence. His statement, set forth at 796-802 contains matters which are clearly evidentiary. Since Lord Lovat was on trial for treason, he was specifically allowed counsel by an act of 1695. Thus, his case indicates that the defendant's right to speak for himself was complementary to the right to counsel rather than an alternative. Following this idea, the American state constitutions generally expressed the right to be heard as a right of the defendant to be heard himself and by counsel.

These cases from State Trials indicate that the defendant was not allowed to give testimony under oath, and was thus technically not regarded as a witness or as giving true legal evidence.[15] However, from the earliest cases, the defendant had the right to respond to the charges brought against him, and this included not merely the right to deny his guilt, but the right to give his account of the facts.

## B. *The Right to be Heard in the American Colonies*

In American legal records there is nothing comparable to the State Trials, and what records of early cases

---

[15] I would also note that because what the defendant said was not evidence, the prosecution did not have the right to cross-examine the accused concerning his statements.

do exist do not resolve the question of the precise degree to which the defendant was permitted to speak in his own defense. Examining various sources from this period I have found no determinative evidence whether or not Americans followed the English practice of allowing the defendant to make unsworn statements in his own behalf. However, the early colonists regarded themselves as Englishmen, having the rights of Englishmen, and tried to establish the common law in the colonies insofar as this was practical. Further, they had vivid memories of the abuses of legal procedure in England during the seventeenth century, when various factions of the civil wars persecuted one another. As a result, the colonists brought to America a strong revulsion to inquisitorial practices such as the Star Chamber. In drafting constitutions, they set forth the rights which they considered fundamental, emphasizing the right of the accused to controvert the case against him. Given their knowledge of and respect for English common law practice, and their revulsion with seventeenth century abuses, it is a reasonable assumption, absent a strong showing to the contrary, that Americans followed the English practice and allowed the defendant to make unsworn statements. It was apparently this right, the right to present a defense, which the early Americans had in mind when they declared that the defendant has a right to be heard. I conclude that it was this same right to present a defense which the drafters of the Oregon Constitution intended to protect when they adopted as part of the Bill of Rights the provision guaranteeing the accused "the right * * * to be heard by himself * * *," a guarantee which had been included in various state constitutions since the revolution. They intended to insure that the defendant would be allowed to present his version of the facts to the jury.[16]

---

[16] A few vestiges of this practice of unsworn statements by the defendant remain. Under ORS 135.095, the defendant at a preliminary hearing is permitted at his option to make an unsworn statement in his defense. At trial, however, the unsworn statement has been almost completely superseded by the sworn testimony of the defendant, who is now permitted to testify as a witness in his own behalf. The sole vestige of the unsworn statement in trials of which I am aware is the right of the accused in courts martial under the Uniform Code of Military Justice to make an unsworn statement, in addition to being permitted to testify in his own defense.

## C. *The Evolution of the Right to be Heard in American Law*

From the early colonial era on, the right to present a defense has been fundamental to our jurisprudence, although it is not without restrictions.[17] The limits of this right, however, have been subject to ongoing evolution, and the scope of the accused's defense has greatly increased during the past century. For example, the drafters of Section 11 acknowledged the defendant's right to have counsel at trial. We now recognize that the role of counsel is so important that we provide the accused counsel at public expense, and allow him to have counsel present at every stage of the proceedings.[18] Other rights have undergone similar sweeping changes.[19]

With respect to the defendant's right to be heard, it appears that the states included this guarantee in their state constitutions and then gradually established rules which restricted the exercise of this right, with little or no consideration of the constitutional questions involved.[20]

---

[17] *Cf. Washington v. Texas,* 388 US 14, 23 n. 21, 87 S Ct 1920, 1925 n. 21, 18 L Ed 2d 1019, 1025, n. 21 (1967) (expressing general approval of testimonial privileges such as lawyer-client, husband-wife, and of rules disqualifying the mentally infirm and witnesses.) The defendant's right to present a defense is subject to legal requirements, such as that evidence must be relevant and material.

[18] On the ongoing evolution of the right to counsel as construed by the United States Supreme Court, see *Bounds v. Smith,* 430 US 817, 97 S Ct 1491, 52 L Ed 2d 72 (1977); *Argersinger v. Hamlin,* 407 US 25, 92 S Ct 2006, 32 L Ed 2d 530 (1972); *Coleman v. Alabama,* 399 US 1, 90 S Ct 1999, 26 L Ed 2d 387 (1970); *Mempa v. Rhay,* 389 US 128, 88 S Ct 254, 19 L Ed 2d 336 (1967); *White v. Maryland,* 373 US 59, 83 S Ct 1050, 10 L Ed 2d 193 (1963); *Douglas v. California,* 372 US 353, 83 S Ct 814, 9 LEd 2d 811 (1963); *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L Ed 2d 799, 93 ALR2d 733 (1963); *Hamilton v. Alabama,* 368 US 52, 82 S Ct 157, 7 L Ed 2d 114 (1961); *Griffin v. Illinois,* 351 US 12, 76 S Ct 585, 100 L Ed 891 (1956); *Powell v. Alabama,* 287 US 45, 53 S Ct 55, 77 L Ed 158 (1932).

[19] *Benton v. Maryland,* 395 US 784, 89 S Ct 2056, 23 L Ed 2d 707 (1969); *Klopfer v. North Carolina,* 386 US 213, 87 S Ct 988, 18 L Ed 2d 1 (1967); *Malloy v. Hogan,* 378 US 1, 84 S Ct 1489, 12 L Ed 2d 653 (1964) (privilege against self-incrimination); *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963) and *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933 (1961) (applying the exclusionary rule under the Fourth Amendment to state proceedings).

[20] The Oregon experience shows that legislatures can and do enact statutes which involve serious constitutional questions without considering these problems. The legislative history of Oregon Laws 1969, ch 293, now ORS 135.455, shows that when the legislature enacted this statute, neither the proponents, the opponents, nor any member of the legislature mentioned the possible conflict

Despite the constitutional provisions, the defendant's right to be heard was overlooked in various changes in criminal procedure.

It appears that the Oregon territorial courts followed the common law practice of regarding defendants as incompetent to give sworn testimony.[21] In 1864, apparently trying to resolve the question, the legislature established the rule of incompetency by statute, by Section 166 of the Criminal Code, which read: "A defendant in a criminal action or proceeding cannot be a witness for or against himself, * * *."[22] It is not clear, however, and I am unable to determine whether or not the defendant was permitted to make unsworn statements in his defense before or after the enactment of this statute.

During this period, there was widespread legal discussion of the scope of the right against self-incrimination, and I find that this discussion and the evolution of this right bears heavily on my consideration of the instant case. At the time the Oregon Constitution was adopted, lawyers throughout the nation were debating the scope of the defendant's right against self-incrimination and its relationship to rules holding defendants incompetent to give sworn testimony. Those who urged retaining the rule that the defendant was incompetent insisted that this was necessary to protect the defendant. They believed that if the defendant could testify, the pressure on him to take the stand would be unbearable, ruthless cross-examination would make him appear guilty regardless of the truth, and the right against self-incrimination would be wiped out. Several courts during this period articulated these concerns in rulings barring defendants from testifying in their own defense.[23]

---

between this statute and the defendant's right to be heard. *See* Minutes, Hearings, House Judiciary Committee, April 4, 1969, p 2; Minutes, Hearings, Senate Judiciary Committee, May 5, 1969, pp 1-2.

[21] *See Latshaw v. Territory,* 1 Or 140 (1854) (a person jointly indicted is not competent to testify for another unless he is tried himself first).

[22] Act of Oct. 19, 1864; Gen Laws of Oregon, ch. 16, § 166 (Deady & Lane ed 1843-1872).

[23] *People v. Tyler,* 36 Cal 522, 528-30 (1868); *State v. Cameron,* 40 Vt 555, 565-566 (1868); *Ruloff v. People,* 45 NY 213, 221-222 (1871); *People v. Thomas,* 9 Mich 314, 320-321 (1860) (Campbell, J., concurring):

Those who favored allowing defendants to testify lent credence to these fears. They charged that the privilege against self-incrimination was a shield for the guilty rather than a protection for the innocent.

In 1864, the same year in which the Oregon legislature declared that the defendant was not competent to be a witness, Maine became the first state to adopt a statute making the defendant generally competent to be sworn as a witness in his own defense.[24] Once this first inroad was made, change followed quickly. In 1880, the Oregon legislature adopted a provision which rendered defendants competent to testify at their election.[25] By then at least 30 other American jurisdictions had adopted this rule, and by the end of the century, only Georgia did not allow the defendant the right to give sworn testimony.[26]

To determine the modern scope of the defendant's right to be heard, however, we must look to the circumstances of the modern criminal trial. In the context of the

---

"[I]f we were to hold that a prisoner offering to make a statement must be sworn in the cause as a witness, it would be difficult to protect his constitutional rights in spite of every caution, and would often lay innocent parties under unjust suspicion where they were honestly silent, and embarrassed and overwhelmed by the shame of a false accusation. * * * [It would result in] * * * the degradation of our criminal jurisprudence by converting it into an inquisitorial system, from which we have thus far been happily delivered."

[24] Me Pub Law 1864, ch 280, quoted in Popper, *supra* note 12, at 463 and n. 47.

[25] Act of Oct. 25, 1880; Or Laws 1880, § 1, p 28; Crim. Code § 166:

"In the trial of or examination upon all indictments, complaints, information and other proceedings before any court, magistrate, jury, grand jury or other tribunal, against persons accused or charged with the commission of crimes or offenses, the person so charged or accused shall at his own request, but not otherwise, be deemed a competent witness, the credit to be given to his testimony being left solely to the jury under the instructions of the court, or to the discrimination of the magistrate, grand jury or other tribunal, before which such testimony may be given; *Provided,* His waiver of said right shall not create any presumption against him; that such defendant or accused, when offering his testimony as a witness in his own behalf, shall be deemed to have given to the prosecution a right to cross examination upon all facts to which he has testified, tending to his conviction or acquittal."

[26] Popper, *supra* note 12 at 457-470; 2 Wigmore, Evidence §§ 575-579 (Chadbourn rev ed 1979); Thayer, *A Chapter of Legal History in Massachusetts,* 9 Harv L Rev 1, 12 (1895); *Ferguson v. Georgia,* 365 US 570, 578-582, 81 S Ct 756, 761-763, 5 L Ed 2d 783, 789-91 (1961); *People v. Rakiec,* 289 NY 306, 309, 45 NE2d 812, 813-814 (1942); Note, *Due Process v. Defense Counsel's Unilateral Waiver of the Defendant's Right to Testify,* 3 Hast Con L Q 517, 519-522 (1976).

modern trial, the defendant has a general right to testify, and in many instances there is a strong expectation that the defendant will testify whether or not she is legally bound to do so.[27] The common law disability precluding the defendant from testifying is now of only historical significance.

Evolution of the law is consistent with the intent of the drafters of our Constitution. Those men were aware of the changing nature of legal rules. Many of them had helped to change the laws of the territory,[28] and later helped to change the laws of the new state. There is no reason to believe that the framers of our Constitution intended to freeze the defendant's constitutional rights in the form of rules that they realized were then undergoing changes. As the Supreme Court said of the Seventh Amendment:

> "The Amendment did not bind the federal courts to the exact procedural incidents or details of jury trial according to the common law in 1791, any more than it tied them to the common-law system of pleading or the specific rules of evidence then prevailing. * * * The more logical conclusion, we think, and the one which both history and the previous decisions here support, is that the Amendment was designed to preserve the basic institution of jury trial in only its most fundamental elements, not the great mass of procedural forms and details, varying even then so widely among common-law jurisdictions."

*Galloway v. United States,* 319 US 372, 390-392, 63 S Ct 1077, 1087-1088, 87 L Ed 1458, 1471-1472 (1943).[29]

---

[27] Popper, *supra* note 12, at 470-471.

[28] In 1853, the territorial legislature revised the civil code, doing away with the old common law forms of action. They based their revision on recent New York law. See "Advertisement" [front-piece], Gen Laws of Oregon 1853-54. *See also State ex rel Kashmir Corp. v. Schmidt,* 291 Or 603, 633 P2d 791 (1981). This is particularly significant because the New York code revision was largely the work of David Dudley Field, who was one of the leading advocates for removing the incompetency of parties to litigation, and who had pressed this change on the New York revisers. *See* Popper, *supra* note 12, at 467-468.

[29] *Cf. Faretta v. California,* 422 US 806, 819-20 n 15, 45 L Ed 2d 562-63 n 15, 95 S Ct 2525, 2533 n 15 (1975); *Williams v. Florida,* 399 US 78, 92-93, 90 S Ct 1893, 1902, 26 L Ed2d 446, 456 (1970); *Bloom v. Illinois,* 391 US 194, 198-200, n. 2, 20 L Ed 2d 522, 528 n. 2, 88 S Ct 1477, 1480-81 n. 2 (1968) ("the ultimate question is not whether the traditional doctrine is historically correct but whether the rule that criminal contempts are never entitled to a jury trial is a necessary or acceptable construction of the Constitution."); *Washington v. Texas, supra* note 16, 388 US at 21-22, 18 L Ed 2d at 1024-25, 87 S Ct at

I conclude that the defendant's right to be heard by herself, as guaranteed by Section 11, is not bound by the minutiae of legal rules in effect in 1859. The fact that the defendant did not then clearly have a right to testify under oath in her trial is noteworthy, but not controlling.[30]

In support of this conclusion I note that courts in several other states have held that the right to testify is constitutionally guaranteed by the due process provisions of the Fourteenth Amendment,[31] or by the due process clause and state constitutional provisions.[32]

---

1924-25 (1967) (the provisions of the compulsory process clause are not bound by the rules of 1789).

[30] *Cf.* Westen, *supra* note 13 at 114-115 (footnote omitted):

"There is no reason to believe that the framers intended to freeze the defendant's constitutional rights forever in the form of rules already undergoing change. It is perfectly sound to conclude that they intended instead to protect the main and evolving principles of the common law without their accompanying minutiae, and to leave to future courts the task of applying those principles in specific cases. * * *"

[31] *People v. Chavez,* 621 P2d 1362 (Colo 1981); *Hughes v. State,* 513 P2d 1115 (Alaska 1973); *State v. Albright,* 96 Wis 2d 122, 291 NW2d 487 (1980); *Ingle v. State,* 92 Nev 104, 546 P2d 598 (1976); *People v. Knox,* 58 Ill App 3d 761, 16 Ill Dec 182, 374 NE2d 957 (1978); *MacKenna v. Ellis,* 280 F2d 592, 595 (5th Cir 1960), modified 289 F2d 928 (5th Cir 1961) (en banc) ("[I]t is basic to due process that an accused person have a fair opportunity to tell his story in a fair trial."); *Fowle v. United States,* 410 F2d 48, 53-54 (9th Cir 1969).

While the United States Supreme Court has not specifically addressed the question whether the accused has a constitutional right to testify, many of its statements indicate that it assumes that the defendant has such a right. *See, e.g., Faretta v. California,* 422 US 806, 819-820 n. 15, 95 S Ct 2525, 2533 n. 15, 45 L Ed 2d 562, 572-573 n. 15 (1975) ("it is now accepted, for example, that an accused has a right * * * to testify on his own behalf * * *"); *Harris v. New York,* 401 US 222, 225, 91 S Ct 643, 645, 28 L Ed 2d 1, 4 (1971) ("Every criminal defendant is privileged to testify in his own defense, or to refuse to do so."); *Specht v. Patterson,* 386 US 605, 610, 87 S Ct 1209, 1212, 18 L Ed 2d 326, 330 (1967); *In re Oliver,* 333 US 257, 275, 68 S Ct 499, 508, 92 L Ed 682, 695 (1948) ("[D]ue process * * * requires that one * * * have a chance to testify * * *.").

The Court has also held that due process requires a right to testify in situations much less critical to the liberty of the defendant. *See Gagnon v. Scarpelli,* 411 US 778, 786, 93 S Ct 1756, 1761, 36 L Ed 2d 656, 664 (1973) (probation revocation); *Morrissey v. Brewer,* 408 US 471, 489, 92 S Ct 2593, 2604, 33 L Ed 2d 484, 499 (1972) (parole revocation); *Goldberg v. Kelly,* 397 US 254, 269, 90 S Ct 1011, 1021, 25 L Ed 2d 287, 299-300 (1973) (termination of welfare benefits). It would be somewhat incongruous to rule that the constitutional principles give a person on parole or probation, one already convicted of a crime, the right to testify, and would relegate the defendant, one guaranteed a constitutional presumption of innocence, to a statutory right to testify.

I would hold, therefore, that the constitutionally guaranteed right to be heard includes the right to testify.

## III. PRECLUSION AS A VIOLATION OF THE RIGHT TO TESTIFY

The question remains whether this right was violated in this case. The defendant was not allowed to testify as to her alleged alibi because the trial court ruled that her failure to file and serve a technically proper notice rendered her alibi testimony inadmissible. I now inquire whether Section 11 guarantees the defendant the right in these circumstances to let the jury hear her alibi testimony and decide its truthfulness.

---

One federal court, in a somewhat different context, ruled that the defendant has a right to testify under the fourteenth amendment to the United States Constitution, saying:

"Any contrary holding would strongly imply that if state statutes authorizing criminal defendants to testify were repealed, thereby rendering criminal defendants incompetent to testify, a state court could constitutionally refuse to permit any criminal defendant from testifying. Such a result clearly would be out of step with the current state of the law. Indeed, it would be ironic to find that the right against self-incrimination is entitled to constitutional protection, but the right to articulate a defense is not."

*United States ex rel Wilcox v. Johnson,* 555 F2d 115, 119 (3rd Cir 1977), quoting and adopting an unpublished opinion of the District Court for the Eastern District of Pennsylvania.

[32] *State v. Hibbard,* 273 NW2d 172 (SD 1978) (state constitution); *State v. Rosillo,* 281 NW2d 877 (Minn 1979) (both federal and state constitutions); *People v. Robles,* 2 Cal 3d 205, 85 Cal Rptr 166, 466 P2d 710 (1970) (no specific source); *People v. Mosqueda,* 5 Cal App 3d 540, 545, 85 Cal Rptr 346, 349 (1970); *Pigg v. State,* 253 Ind 329, 253 NE2d 266 (1969); *People v. Farrar,* 36 Mich App 294, 304-305 n. 20, 193 NW2d 363, 369 n. 20 (1971). *See also State v. Noble,* 109 Ariz 539, 514 P2d 460 (1973) (resting on the Arizona Constitution, which guarantees the right to testify). *See also* Fed R Crim P 12.1(e) (the failure to comply with the federal notice of alibi rule does not limit the defendant's right to testify).

There is authority to the contrary, holding or accepting that the right to testify is not constitutionally guaranteed. *Sims v. State,* 246 Ind 660, 208 NE2d 469 (1965); *Kinder v. Commonwealth,* 269 SW2d 212 (Ky 1954); *Smetana v. State,* 22 Ohio L Abs 165 (Ohio App 1936); *State v. Rider,* 194 Kan 398, 399 P2d 564 (1965); *State v. Hutchinson,* 458 SW 2d 553 (Mo 1970); *State v. McKenzie,* 17 Md App 563, 303 A2d 406 (1973); *Sims v. Lane,* 411 F2d 661, 664 (7th Cir 1969), *cert. denied* 396 US 943, 90 S Ct 378, 24 L Ed 2d 244 (1969); *United States v. Garguilo,* 324 F2d 795 (2d Cir 1963); *Newsom v. Smyth,* 261 F2d 452 (4th Cir 1958), *cert. denied* 359 US 969, 79 S Ct 837, 3 L Ed 2d 837 (1959). As noted in the cogent discussion by Judge Godbold of the Fifth Circuit, *Wright v. Estelle,* 572 F2d 1071, 1076-1077, n. 9 (Godbold, J. dissenting), these opinions predate the Supreme Court's ruling in *Gagnon, Morrissey,* and *Scarpelli,* and various other modern legal developments which seriously undercut the view that the right to testify is not a constitutionally guaranteed right.

The state contends that preclusion of alibi testimony is necessary to protect trial courts from the introduction of perjurious testimony. The Court of Appeals accepted this reasoning in *State v. Wardius, supra,* which it followed herein. *Wardius* in turn relied on *State ex rel Simos v. Burke,* 41 Wis 2d 129, 163 NW2d 177 (1968).

These decisions rest on an evidentiary theory of preclusion. As explained in *Simos,* since the defendant's alibi, if true, would exculpate her and spare her the necessity of a trial, she is not prejudiced by pretrial disclosure of her alibi. Therefore, an alibi not disclosed until trial is assumed to be untrue. The theory continues that because the defendant's right to testify under oath guarantees only the right to testify truthfully, exclusion of the alibi testimony (assumed false) does not infringe her right to testify.[33] ORS 135.455 embodies an irrebuttable assumption that an undisclosed alibi is untruthful. The alibi testimony is declared to be incompetent; that is, it is evidence which cannot be presented to the jury in any circumstances.

This rule rests on the idea that the right to present evidence is subordinate to courts' interest in preventing perjured testimony, and that perjury-tainted decisions can be best avoided by broad rules that keep all suspect evidence from the jury, even if this is the only evidence available on critical issues. I think this is an example of what Professor Edmund Morgan described as "the obsession of early judges and of earlier and later legislators that perjury can be prevented by exclusionary rules."[34] I endorse Professor Morgan's conclusion as to the wisdom of such rules: "No rational procedure will sanction an exclusionary rule supported only by its supposed efficacy to hinder or prevent false testimony."[35]

---

[33] "What is constitutionally protected is the right of a defendant to testify truthfully." *State ex rel Simos v. Burke,* 41 Wis 2d 129, 137, 153 NW2d 177, 181 (1968).

[34] Morgan, "Forward," ALI Model Code of Evidence 6 (1942).

[35] *Id.*

"[T]he truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury * * *."

I do not question the legitimacy of society's interest in preventing acquittals based on perjured testimony. Further, the search for truth, which is the fundamental purpose of the adversary process, is enhanced if both sides are aware of at least the basic outlines of the opposing case.[36]

The commentaries which have advocated notice statutes are, however, not primarily concerned with the uncorroborated testimony of the defendant. The concern underlying alibi notice statutes was the use of numerous surprise witnesses to corroborate the defendant's claims.[37] The legislative history of what is now ORS 135.455 shows a similar concern with the use of surprise witnesses to corroborate the defendant's claims.[38] The commentators were very specific in urging that preclusion, if adopted at all, would apply only to these witnesses, not the defendant. "The purpose of the statute is to eliminate surprise witnesses, which obviously would not include the defendant."[39]

---

*Rosen v. United States,* 245 US 467, 471, 62 L Ed 406, 409, 38 S Ct 148, 150 (1918); *Washington v. Texas,* 388 US 14, 22-23, 18 L Ed 2d 1019, 1024-25, 87 S Ct 1920, 1924-25 (1967).

[36] *Williams v. Florida,* 399 US 78, 82, 90 S Ct 1893, 1896, 26 L Ed 2d 446, 450 (1970).

[37] Stassen, *The Show Window of the Bar,* 20 Minn L Rev 577, 580-581 (1936) ("a parade of witnesses"); Millar, *The Modernization of Criminal Procedure,* 11 J Crim L G Criminology 344, 350-351 (1920); Waddington, *Criminal Discovery and the Alibi Defense,* 37 L A Bar Bull 7 (1961); Note, *Criminal Law: Statutory Regulation of Alibi Defense Through Notice Requirements,* 30 Ind L J 106, 107-108 (1954).

[38] At the hearings before the Senate Judiciary Committee, Mr. [now Judge] George van Hoomissen, Multnomah County District Attorney spoke in favor of the bill which became ORS 135.455.

> "Mr George Van Hoomissen explained that it was not uncommon in a case where a person was charged with a felony * * * for the state to put on its evidence, rest its case and then the defendant at two o'clock on a Friday afternoon takes the stand and without any warning whatever says that on the day of the crime, he was in Wichita. This, of course, catches the state and the police officers completely by surprise because they had no advance warning that this defense was going to be raised. The defendant will then produce witnesses to attempt to corroborate his alibi; maybe they are ex-convicts or relatives of the defendant. In any event, there is no opportunity for the state to either verify the alibi or *to successfully cross examine the alibi witnesses.*" (Emphasis added)

Minutes, Hearings, Senate Judiciary Committee, May 5, 1969, p 1.

[39] Waddington, *supra* note 34, at 2; Note, *supra* note 34, at 109 n. 20 and 118.

Several courts have acknowledged that the defendant's uncorroborated claim of alibi presents a very weak defense.[40]

The defendant's alibi testimony and the testimony of a witness corroborating the defendant are fundamentally different. The prosecution must prove each element of the crime beyond a reasonable doubt, including the presence of the defendant where this is necessary to establish her guilt. Thus, the prosecution must be prepared in any event to counter the defendant's denial that she was present at the scene of the crime. By contrast, a witness corroborating the defendant's alibi is not a normal subject of pretrial investigation, and the complaint of those urging notice requirements was that

> "the prosecutor in such cases might easily disclose the falsity of the testimony had he the time to investigate both the reliability of the witnesses and the factual details of the evidence, but he is often denied opportunity."[41]

Thus, the state's interest in cases where there is a surprise claim of alibi is not so much in precluding the presentation of the alibi evidence, but in having a reasonable opportunity to investigate this testimony. I recognize that the state has a legitimate interest in preventing false claims of alibi, but can this interest justify a rule of preclusion that works in such a sweeping manner as the

---

[40] See, e.g. Johns v. Perini 440 F2d 577, 579 (6th Cir 1971); State v. Hibbard, 273 NW2d 172, 174 (SD 1978).

In some states, the language of the alibi notice statute suggests a distinction between the defendant and the defendant's witnesses. Courts in New York and Michigan have held that the statutes in those states precluded only the testimony of witnesses, while the defendant could testify. People v. Rakiec, 289 NY 306, 45 NE2d 812 (1942); People v. Merritt, 396 Mich 67, 238 NW2d 31 (1976). In neither case did the court reach the constitutional question of preclusion of the defendant's testimony. Cf. State v. Hibbard, 273 NW2d 172 (SD 1978) (adopting the reasoning of Rakiec and Merritt, but relying also on state constitutional grounds). Each of these cases required a strained reading of the statute involved. I do not think the Oregon statute is susceptible to this reading. The alibi notice statute reads as to preclusion: "[The defendant] shall not be permitted to introduce evidence at the trial * * *." This language is to be contrasted with the language of ORS 135.865, concerning the sanctions for failure to comply with discovery requirements, which reads "[T]he court may * * * refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, * * *."

[41] Note, Criminal Law: Statutory Regulation of Alibi Defense Through Notice Requirements, 30 Ind L J 106, 107 (1954).

sanction imposed by ORS 135.455? The goal of the adversary process is the discovery of truth. Reflecting this goal, modern courts and legislatures have shown a consistent trend against rules of incompetence resting on categories of assumed untruthfulness.[42] The impossibility of determining *a priori* whether a given witness will testify truthfully makes categorical rules untenable.

This case illustrates the tenuous relationship between a defective notice and the truth or falsity of the defendant's alibi testimony. There is no evidence that the defendant had any knowledge of or complicity in the failure to file a proper notice. It is hard to discern what basis the failure to give notice provides for leaping to the conclusion that the defendant's alibi testimony would be false.[43]

The defendant who testifies to an alibi will be subject to full cross-examination. While the prosecution in this case seems to belittle the power of cross-examination to disclose the truth or falsity of the defendant's claimed alibi, I believe otherwise. As Professor Wigmore put it: "[I]t is beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore, Evidence § 1367 at 32 (Chadbourn rev. ed 1974).

As to the possible affront against the courts from the presentation of perjurious testimony, the appropriate course is clearly to bring appropriate criminal charges against the offender.

The state contends that absent a proper notice alibi testimony is at best half truth. But the preclusion

---

[42] For example, at one time, common law rules disqualified non-Christians, anyone convicted of a crime and all interested persons. These categorical rules have since been abolished. *See generally* 2 Wigmore, Evidence §§ 488, 518-524, 575-580 (Chadbourn rev ed 1979); 6 Wigmore, *id.* §§ 1816-1829 (Chadbourn rev ed 1976). In this regard I also note the new Oregon Evidence Code, Rule 102 (*effective Jan.* 1, 1982), "The Oregon Evidence Code shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

[43] *Cf. Hackett v. Mulcahy,* 493 F Supp 1329, 1336 (DC NJ 1980) (neither error nor misconduct by counsel constitutes waiver of defendant's right to present alibi witnesses).

sanction may have an effect equally distorting of the truth. The defendant here was permitted to deny that she was at the Fastway gas station, but was not permitted to say affirmatively where she was, nor was she permitted to explain her silence on this point. Her silence may have been misleading on this issue and on her general credibility, and unlike testimony, the misleading effect of silence could not be countered by further questioning.

Under our statutes any person, although charged with the commission of a crime, is assumed to be innocent until guilt is established beyond a reasonable doubt. *See* ORS 17.250(5) at the time of this trial, and *see* Or Laws 1981, ch 892, § 85a. If our statutes did not so provide, the Due Process Clause of the Fourteenth Amendment to the United States Constitution would. *In re Winship,* 397 US 358, 364, 90 S Ct 1068, 1073, 25 LEd 2d 368, 375 (1969); *Jackson v. Virginia,* 443 US 307, 99 S Ct 2781, 61 LEd 2d 560 (1979). The trial upon a criminal charge is for the very purpose of establishing whether, beyond a reasonable doubt, the defendant has committed the crime charged. Under Section 11 the defendant has a right to testify and to establish at least a reasonable doubt that she is guilty. The statutory sanction of preclusion of her testimony prevents the factfinder from having relevant evidence from which the factfinder could conclude that there is a reasonable doubt that defendant is the person who has committed the crime. The statutory sanction may well result in the conviction of a person who did not commit the proscribed act. Even assuming that the notice requirement otherwise is valid, conviction of a crime by silencing the defendant is not a permissible nor a necessary way to enforce it. Whatever other sanctions[44] the legislature might constitutionally impose against a defendant or her counsel for failure to abide by the notice requirements of ORS 135.455, the legislature cannot deprive her of her right under Section 11 to give her own testimony that she was elsewhere and therefore not the person who is guilty of the offense charged. The statute must give way to the constitution.

---

[44] Note the various innovative suggestions offered in Note, *The Preclusion Sanction: A Violation of the Constitutional Right to Present a Defense,* 81 Yale L J 1342, 1356-60 (1972). By mentioning this Note as a source of possible suggestions, I do not endorse any specific measure suggested therein.

Accordingly, I agree that the defendant's conviction must be reversed and the cause remanded for a new trial.

Linde and Peterson, JJ., join in this opinion.