468 A.2d 400

**Sylvester MAYFIELD AKA Robert Wilson**

**v.**

**STATE of Maryland.**

**No. 99, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Dec. 12, 1983.

542

David P. Sutton, Assigned Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on brief, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., of Maryland, Kurt L. Schmoke, State's Atty., for Baltimore City and Gary Ticknor, Asst. State's Atty., for Baltimore City on brief, for appellee.

Argued before LISS, ALPERT and GETTY, JJ.

ALPERT, Judge.

This case requires our examination of the criminal defendant's right to testify in his own behalf. For the reasons stated herein, we hold that the appellant's statutory right to testify in his own behalf was impermissibly restrained requiring a reversal of his conviction.

## FACTS

On the afternoon of January 19, 1982, Kevin Chase accompanied his friend, Anthony Carroway, to the George Street Apartments, a "project building" in downtown Baltimore. The purpose of Carroway's visit was to repay money loaned him by Cedric Allen. Allen resided on the tenth floor of the building. Because the lobby was crowded, the men decided to take the stairs. According to Chase, when they got to the third-floor landing, Sylvester Mayfield, appellant, motioned them into the hallway, put a gun at Carroway's side, and ordered them to give him their money. Understandably, both men complied. Chase described the gun as a black revolver resembling a magnum [handgun]. Chase testified

he was robbed of $240; Carroway stated between $240 and $250 was stolen. Appellant then escaped by ascending the stairs. Chase and Carroway returned to the lobby, hypothesizing that their assailant would have to depart through that area of the building. Carroway hoped "to talk to him to see if I could get my money back."

Approximately one hour later, appellant emerged from the elevator into the crowded lobby. Several events transpired in the span of a few seconds. As Carroway recognized his accoster, he noticed two Baltimore City police officers entering the lobby. Carroway tapped an officer on the shoulder and said, "I just got robbed by that dude right there." Appellant recoiled, turned his back and threw an object into the elevator the precise instant its door was closing. Agent Bruce Dolinka testified that the object "landed with the sound of a large hard metal object." In the ensuing chaos, Dolinka and his fellow officer grabbed appellant, Chase and Carroway, pressed them to a wall and frisked them. Chase and Carroway were subsequently released after they gave statements to the police. When questioned, appellant identified himself as Robert Wilson. A post-arrest search of appellant recovered $332.

Appellant was charged with robbery with a deadly weapon and related offenses. He was tried on October 27 and October 28, 1982 before a jury in the Criminal Court of Baltimore.

Appellant contended that the activities at the George Street Apartments were in fact a drug deal gone awry, and that Chase and Carroway falsely accused appellant in order to blackmail him. On cross-examination, appellant sought to establish that Chase had visited appellant's mother and sister and offered not to testify if they paid him. Chase denied going to see either woman, but admitted receiving telephone calls from a woman identifying herself as appellant's sister offering money not to testify against her brother. Carroway also testified that he had received two calls from appellant's sister proposing that she could have her

lawyer arrange for him to get his money back if he didn't press charges.

Appellant, after conferring with his counsel, elected not to testify, expressing concern about his past criminal record. Defense counsel named appellant's mother as the only defense witness for the purpose of rebutting Chase and Carroway's testimony regarding the phone calls. The State objected to the mother's testimony because she had not been sequestered during the State's case-in-chief. The Assistant State's Attorney stated he did not request sequestration, relying on defense counsel's statement that there would be no defense witnesses unless the defendant decided to testify. The trial court sustained the State's objection and pointed out that appellant's counsel was aware that his line of questioning of Chase might require the mother's rebuttal testimony. Appellant's counsel then explained that his actions resulted from the expectation that appellant's sister would appear and present a receipt which he could use to confront Chase with respect to the alleged extortion. The woman did not appear. This explanation did not persuade the court to change its decision because counsel did not have the receipt when cross-examining Chase. Appellant then advised the court that he had no defense witnesses.

The jurors returned to the jury box, and the defense rested. The court informed the jury:

... [A]s you heard, the defense has rested its case and there will be no testimony from defense and that will conclude all the testimony in this case.

The jurors were then excused for the day.

When trial resumed the next morning, appellant informed the court that he now wanted to testify.

Your Honor, I wish to testify on my own behalf because I mean without the testimony I don't think that it would be, I don't think I could really get a fair trial. Because there's one side as it stands now. I have been denied the testimony of my mother which is a key witness. I don't see any way possible to get a fair trial.

The State objected on the grounds appellant had given a "fair waiver" to exercise his testimonial privilege. The court sustained the objection and did not permit appellant to testify.

THE COURT: I'm going to sustain the objection. I believe the Defendant has rested his case, he had adequate opportunity to consult with counsel about whether or not he wanted to testify. Mr. Kaplan indicated he had talked several times previously with the Defendant. Although those discussions were before my ruling on his mother's testimony. Even after my ruling on his mother's testimony, there was every opportunity for the Defendant to speak up before the jury left yesterday. He did not. Even after the jury left yesterday we were going over instructions, the Defendant was here throughout the entire time and never said anything. He is saying something now for the first time this morning. What the Defendant is seeking to do is reopen his case at this time. I believe it's a matter for the discretion of the trial Court whether or not to allow him to reopen his case. I do not think he has shown good cause. He never, according to Mr. Kaplan, he never anticipated his mother testifying to begin with, and because his name was never, because Mr. Kaplan never gave the mother's name as a witness, he never could have anticipated his mother was going to testify. And notwithstanding the fact that he never anticipated his mother's testimony until last moment, he still had several conversations with Mr. Kaplan prior to the commencement of the trial and/or the beginning stages of the trial as to whether or not he was going to testify. Mr. Kaplan has so stated this yesterday. I would also point out that, and the State can correct me if I'm wrong, the State has excused the two witnesses in the case who were victims in the case. They are not present in Court today and therefore not available to be able to be recalled as rebuttal witnesses if the State should decide that their rebuttal testimony would be desirable and needed. Is that correct?

MR. TICKNER: That's correct, Your Honor.

THE COURT: So the State is put at a disadvantage in this regard. A further reason for my ruling is that to allow the Defendant to testify at this time, in my judgment, would allow him to present his defense in a more distinctive and advantageous atmosphere for himself, rather than have his testimony immediately following all of the State's witnesses as would have been the case yesterday, if he had elected to testify. It would be waiting for a new day to dawn, the beginning of a new day, his testimony alone goes before the jury today after the jury was told the case was all over, as far as testimony is concerned, after motions had been heard, after instructions to the jury, ready to come in to the Courtroom, they're ready to hear closing arguments and instructions. And all of a sudden, they're told now you're going to hear the Defendant's version. I think this gives the Defendant an undue advantage in the atmosphere of his testimony. And for all of these reasons, I sustain the State's objection.

Appellant was found guilty of two counts of robbery with a deadly weapon and two related counts of use of a handgun in the commission of a crime of violence. He was sentenced to 25 years imprisonment without parole pursuant to Maryland's mandatory sentencing, Maryland Code Ann. Art. 27, § 643B.

Three arguments are presented to us in this appeal:

I. The trial court erred prejudicially in refusing to permit Appellant to testify in his own behalf.

II. The court erred in invoking the sequestration rule to prevent the testimony of Appellant's mother.

III. The prosecutor's comments in closing argument concerning Appellant's failure to produce exculpatory evidence were so prejudicial as to deny Appellant a fair trial.

We believe appellant should have been permitted to testify and that the trial court abused its discretion in failing to

permit appellant to reopen his case. Therefore, we shall reverse the conviction below. Accordingly, we need not address the other issues presented on appeal.

## THE LAW

Today, in Maryland, the criminal defendant's right to testify is embodied in Md.Cts. & Jud.Proc.Code Ann. § 9–101.

> Unless otherwise provided in this subtitle: (1) A person shall not be excluded from testifying in a proceeding because of incapacity from crime or interest in the matter in question; and (2) litigants and their spouses are competent and compellable to give evidence.

In 1973, prior to the Code revision which resulted in the Courts and Judicial Proceedings Article, the right to testify was phrased in these terms:

> In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes and offenses, and in all proceedings in the nature of criminal proceedings in any court of this State, and before a justice of the peace or other officer acting judicially, the person so charged shall at his own request, but not otherwise, be deemed a competent witness; but the neglect or refusal of any such person to testify shall not create any presumption against him....

Art. 35, § 4 (repealed in 1973). Understandably, a comparison of the phraseology of these two statutes could lead to the honest inquiry as to why the clear articulation of the right to testify found in Art. 35, § 4 was befogged by the more general wording of the present statute.

We explain the answer to this inquiry by examining the roots of § 9–101—the common law concept of disqualifying those witnesses who have an "interest" in the litigation.

Historically, the disqualification of parties and interested persons in criminal and civil cases was based on the following syllogism: Exclusion of testimony is the appropriate safeguard against false decisions; those with interest in the

underlying facts of the case are likely to speak falsely; ergo, those persons should be totally excluded. 2 *Wigmore on Evidence* § 576 (3d ed. 1940).

Until the 16th century, the criminal defendant tried his own case without the benefit of the assistance of counsel or the ability to present his own witnesses. The accused was permitted to answer the charges against him, question the witnesses presented by the Crown and present his case to the jury. These "rights" provided little to the defendant's cause, however, since the accused's testimony was unsworn and thus not viewed as competent evidence for the jury's consideration. *State v. Douglas,* 292 Or. 516, 641 P.2d 561, 568–69 (1982) (Lent, J., concurring).

The disqualification of criminal defendants' testimony was maintained by the early colonists. During the early part of the nineteenth century, however, a reform movement attempted to lessen the impact of testimonial disqualification. The movement was based on the concept that all relevant evidence should be furnished to the trier of fact. *Ferguson v. Georgia,* 365 U.S. 570, 575, 81 S.Ct. 756, 759, 5 L.Ed.2d 783 (1961). Opponents to this movement feared that once the defendant was permitted to testify, the cross-examination he would be subjected to would make him appear guilty, eviscerating the right against self-incrimination. *State v. Douglas, supra* 641 P.2d at 571 (Lent, J., concurring). It was not until 1864 that an American jurisdiction permitted a criminal defendant to testify at his own trial. *Ferguson v. Georgia, supra* 365 U.S. at 577, 81 S.Ct. at 760. Every American jurisdiction, with the exception of Georgia, enacted similar provisions by 1899. *Id.* at n. 6. Federally prosecuted defendants were conferred this right in 1878. 18 U.S.C. § 3481.

The common law notion of interest similarly applied to parties in a civil action due to their obvious stake in the outcome of the case. This disqualification also eroded under the theory that those who possess the most information about the action, the parties themselves, should be permitted

to put this information to the fact finder. The disqualification was first removed by Connecticut in 1849 and today all American jurisdictions permit testimony by interested parties in a civil case. *Wigmore on Evidence, supra* at § 577.

An examination of the relevant Maryland statutes reveals that "interested witnesses" (*other than criminal defendants*) were qualified to testify in 1864. Md.Ann.Code, art. 37, § 1 read:

> *No person offered as a witness shall hereafter be excluded by reason of incapacity from crime or interest,* from giving evidence, either in person, or by deposition, according to the practice of the courts, in the trial of any issue joined or hereafter to be joined, or of any matter or question, or on any inquiry arising in any suit, action or proceeding, civil or criminal, in any court, or before any judge, jury, justice of the peace or other person having, by law or by consent of parties, authority to hear, receive and examine evidence; but that every person so offered may and shall be admitted to give evidence, notwithstanding that such person may or shall have an interest in the matter in question, or in the event of the trial of any issue, matter, question, or inquiry, or of the suit, action or proceeding in which he is offering as a witness, and notwithstanding that such person offered as a witness may have been previously convicted of any crime or offence; but no person who has been convicted of the crime of perjury shall be admitted to testify in any case or proceeding whatever, and the parties litigant, and all persons in whose behalf, any suit, action or other proceeding may be brought or defended, themselves, and their wives and husbands shall be competent and compellable to give evidence in the same manner as other witnesses, except as hereinafter excepted.

(emphasis added.) So that there would be no misunderstanding that the word "interest" used in § 1 would be construed to include the criminal defendant, § 3 of Article 37 was enacted. It stated:

> No person who, in any criminal proceeding, is charged with the commission of an indictable offence, or any offence punishable on summary conviction, shall be competent or compellable to give evidence for or against himself, . . .

See *Davis v. State,* 38 Md. 15, 45–49 (1873).

Maryland criminal defendants were unequivocally granted the right to testify in 1876 when Art. 37, § 3 was repealed and replaced by:

> In the trial of all indictments, complaints, and other proceedings, against persons charged with the commission of crimes and offenses, and in all proceedings in the nature of criminal proceedings, in any court of this State, and before a justice of the peace or other officer acting judicially, the person so charged shall, at his own request but not otherwise, be deemed a competent witness; but the neglect or refusal of any such person to testify shall not create any presumption against him.

No change was made in Art. 37, § 1. Section 1 of Art. 37 later became § 1 of Art. 35. Section 3 of Art. 37 was embodied in § 4 of Art. 35.

In 1970, the Commission to Revise the Annotated Code of Maryland was established to improve the Code's organization, eliminate obsolete or unconstitutional provisions and resolve inconsistencies in the law. To that end, in 1973 the Commission reorganized and transferred much of Article 35 into the newly-created Courts and Judicial Proceedings volume of the Annotated Code. The Commission recommended a simplification of the language and style of Article 35, § 1.

> Sec. 9–101. General.
>
> Unless otherwise provided in this subtitle, every person is competent to be a witness.

The Commission's Report to the General Assembly makes it clear that the suggested provisions were stylistic and not intended to make any substantive changes in the existing law. The Commission's proposal would indeed have achieved this result so far as former Art. 35 §§ 1 and 4 were

concerned. Since the Commission draft did not "otherwise" provide, a criminal defendant, as well as any other person who at common law would have been incompetent because of conviction of crime or interest would have been competent to testify.

Rather than adopt this suggested language, the General Assembly, when it enacted Ch. 2, Laws of 1973 (1st Spec. Session), opted to continue using the essence of the language used in Art. 35, § 1. Additionally, Art. 35, § 4 was repealed in 1973 and re-enacted *in part* in Md.Cts. & Jud.Proc.Code Ann. § 9–105. That section, however, deals solely with the competency to disclose the confidential communications between spouses *during the marriage.* The language concerning the criminal defendant's competency to testify disappeared without explanation.

We are then left with the task of determining whether the General Assembly intended to repeal the criminal defendant's right to testify or whether it was intended that the provisions of Md.Cts. & Jud.Proc.Code Ann. § 9–101 would preserve and encompass that right. That section provides in pertinent part:

> Unless otherwise provided in this subtitle: (1) A person shall not be excluded from testifying in a proceeding because of *incapacity from crime or interest in the matter in question;* and (2) litigants and their spouses are competent and compellable to give evidence.

(emphasis supplied.) The term "incapacity from crime" refers to those witnesses excluded from testifying as a result of a conviction of an infamous crime. 2 *Wharton's Criminal Evidence* § 369 (13 ed. Torcia 1972). Thus, we must determine whether the words "interest in the matter in question" includes or excludes a criminal defendant.

It is well settled that "a change in the phraseology of a statute in a codification will not as a general rule modify the law, unless the change is so radical or material that the intention of the Legislature to modify the law appears unmistakeably from the language of the Code."

*Bureau of Mines v. George's Creek Coal and Land Co.,* 272 Md. 143, 155, 321 A.2d 748 (1974); *Della Ratta v. Dixon,* 47 Md.App. 270, 283, 422 A.2d 409 (1980). Also, it is presumed that the Legislature had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law, and as to the judicial decisions with respect to such prior and existing law and legislation. *Equitable Trust Co. v. State Comm'n on Human Relations,* 287 Md. 80, 88, 411 A.2d 86 (1980); *Supervisor Assessor of Anne Arundel Co. v. Southgate Harbor,* 279 Md. 586, 591–92, 369 A.2d 1053 (1977).

The language in the newly-enacted § 9–101 is nearly identical to that used in Maryland competency statutes since 1864. *Compare* Md.Cts. & Jud.Proc.Code Ann. § 9–101 *with* Md.Ann.Code, art. 37, § 1 (1864), *supra.* We presume that the Legislature had knowledge that:

1) interested parties were not permitted to testify at common law;

2) parties interested in the matter in question were qualified to testify in 1864;

3) to prevent the misunderstanding that interested parties included criminal defendants, the General Assembly enacted another statute expressly disqualifying criminal defendant's testimony in 1864;

4) criminal defendants were deemed competent witnesses in 1876;

5) as a result of this action, it was understood that the use of the words "interest in the matter in question" included both civil litigants and criminal defendants and that there was no need to expressly reenact what was Art. 35, § 4; and

6) the General Assembly did not intend to repeal the right to testify as it had existed in Maryland for nearly 100 years.

Therefore, we conclude that the General Assembly, with full presumed knowledge of prior judicial interpretation and

statutory history, intended the words "interest in the matter in question" to include the concepts previously set out in Md.Ann.Code, art. 35, § 4 (1957, 1972 Cum.Supp.) which qualified criminal defendants to testify in their own behalf.

The statutory right to testify in its pre-Section 9–101 form was first alluded to in *Kinnard v. State,* 183 Md. 377, 38 A.2d 92 (1944), where the Court of Appeals decided whether one co-defendant was competent to testify against another co-defendant tried under a joint indictment. The Court, citing Art. 35, § 4, *supra,* held that each co-defendant had a right to testify in his own behalf and to produce witnesses. *Id.* at 380, 383, 38 A.2d 92.

The right was first recognized by this Court in *English v. State,* 16 Md.App. 439, 298 A.2d 464, *cert. granted,* 268 Md. 748 (1973), *cert. dismissed as improvidently granted,* July 3, 1973, when the appellant claimed his guilty plea was not freely, voluntarily and intelligently made. We held that the appellant had been advised of his right to testify, but not of his right to remain silent.

Finally, this Court discussed the criminal defendant's *right to testify* in his own behalf in a case where the issue was whether a trial court was required to advise an accused of the *right not to testify.* In *State v. McKenzie,* 17 Md.App. 563, 303 A.2d 406 (1973) (en banc), after a thorough historical analysis, we classified the right to testify in one's behalf as a statutory one requiring an affirmative assertion by the accused. *Id.* at 576–77, 303 A.2d 406.

■ Thus, in Maryland, a criminal defendant has at least a *statutory* right to testify in his own behalf and because of the denial of that right the appellant must, for the reasons discussed *infra,* be retried. There is yet another reason why we might have held that the appellant's right to testify was wrongfully precluded, *i.e.,* because the right to testify in one's own behalf has been characterized as a constitutional right. This Court so stated, albeit indirectly, in *Marshall v. State,* 46 Md.App. 695, 702, 420 A.2d 1266

(1980), *rev'd on other grounds,* 291 Md. 205, 434 A.2d 555 (1981).

Unquestionably, a fundamental element of the due process guaranteed by the Fourteenth Amendment is the *right of an accused* to present a defense, to present his own witnesses, and *to offer his own testimony.*

(Emphasis supplied.)

The United States Supreme Court has never expressly stated that the right to testify is a constitutional right. It has hinted at the recognition of this right, however, on several occasions. The Court's first observation was in *Ferguson v. Georgia, supra.* There, the Court found a Georgia statute retaining the common law notion that a criminal was incompetent to testify violated due process by preventing counsel from eliciting a defendant's statements.

In *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Court held that statements obtained in violation of *Miranda* rights may be used against an accused for impeachment of the accused's credibility. *Id.* at 226, 91 S.Ct. at 646. The use of these statements was deemed proper to ensure that a defendant spoke truthfully when testifying in his own behalf.

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury.

*Id.* at 225, 91 S.Ct. at 645 (emphasis supplied).

During the next Term, the Supreme Court struck down a Tennessee statute requiring the defendant to testify before any other defense witnesses, if at all. *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972). Two rationales were provided for this decision. First, the statute was viewed as a restriction on the right against self-incrimination because an accused could not intelligently assess the need for his testimony prior to hearing the testimony of the defense witnesses. *Id.* at 609–10, 92 S.Ct. at 1893–94. Second, the rule was found to infringe upon the defendant's

due process rights because the mandate that he testify first deprived the accused and his attorney of the opportunity to evaluate the importance of the accused's testimony.

> Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right.

*Id.* at 612, 92 S.Ct. at 1895.

More recently, in a decision examining the defendant's right to self-representation, in a footnote especially germane to this discussion, Justice Stewart commented:

> This Court has often recognized the constitutional stature of rights that, though not literally expressed in the document, are essential to due process of law in a fair adversary process. *It is now accepted, for example, that an accused has a right* to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings, *to testify on his own behalf,* and to be convicted only if his guilt is proved beyond a reasonable doubt.

*Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975) (citations omitted) (emphasis supplied).

A number of federal courts as well as our sister states have observed that the right to testify is constitutional in dimension, guaranteed by the due process provisions of the Fourteenth Amendment or by the due process clause and State constitutional provisions.[1] Illustrative of the reason-

---

1. *United States v. Bifield,* 702 F.2d 342 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *Alicea v. Gagnon,* 675 F.2d 913 (7th Cir.1982); *Ashe v. North Carolina,* 586 F.2d 334, 336 n. 3 (4th Cir.1978), *cert. denied,* 441 U.S. 966, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979); *United States ex rel. Wilcox v. Johnson,* 555 F.2d 115 (3d Cir.1977) (dicta); *Winters v. Cook,* 489 F.2d 174, 179 (5th Cir.1973) (dicta); *United States v. McCord,* 420 F.2d 255, 257 (D.C.Cir.1969); *Hughes v. State,* 513 P.2d 1115 (Alaska 1973); *State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973); *People v. Mosqueda,* 5 Cal.App.3d 540, 545, 85 Cal.Rptr. 346, 349 (1970); *People v. Chavez,* 621 P.2d 1362 (Colo.), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981); *People v. Knox,* 58 Ill.App.3d 761, 16 Ill.Dec. 182, 374 N.E.2d 957 (1978); *Pigg v. State,* 253 Ind. 329, 253 N.E.2d 266 (1969); *People v. Farrar,* 36 Mich.App. 294, 193 N.W.2d 363, 369

ing in these cases is the following passage from *United States v. Bifield,* 702 F.2d 342, 349 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983):

> Not to be deprived of liberty without due process of law under the Fifth Amendment includes the right to a fair adversary process, a part of which is the right to be present and to take the witness stand in one's own defense. The right to testify on one's own behalf is also derived from the compulsory process clause of the Sixth Amendment. That Amendment, directed generally to the rights of the accused, includes an accused's right to call 'witnesses in his favor.' Logically included within the right to call any witness is the accused's right to testify himself should he possess evidence in favor of the defense. That this unmentioned right is a constitutional one is further fortified by the rule of construction contained in the Ninth Amendment, which provides that '[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.' The full scope of the specific guarantees is not limited by the text, but embraces their purpose to provide broad freedom from all 'arbitrary impositions and purposeless restraints.'

(citations omitted.)

The constitutional right to testify in one's own behalf is not without its limits. The *Bifield* court recognized that the criminal defendant must comply with established rules of evidence and procedure and that the right to testify may "bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 350 (*quoting Hughes v. Mathews,* 7

---

n. 20 (1971); *State v. Rosillo,* 281 N.W.2d 877 (Minn.1979); *Ingle v. State,* 92 Nev. 104, 546 P.2d 598 (1976); *State v. Douglas,* 292 Or. 516, 641 P.2d 561, 572–74 (1982) (Lent, J., concurring); *State v. Hibbard,* 273 N.W.2d 172 (S.D.1978); *State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487, *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980). *Contra, Young v. Ricketts,* 242 Ga. 559, 250 S.E.2d 404 (1978), *cert. denied sub nom., Young v. Zant,* 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979); *State v. Hutchinson,* 458 S.W.2d 553 (Mo.1970) (en banc).

Cir., 576 F.2d 1250, 1257, *cert. denied,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978)).

*See also* the compelling logic articulated by Justice Lent in his concurring opinion in *State v. Douglas,* 292 Or. 516, 641 P.2d 561 (1982).

> The [Supreme] Court has ... held that due process requires a right to testify in situations must less critical to the liberty of the defendant. *See Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656, 664 (1973) (probation revocation); *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499 (1972) (parole revocation); *Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287, 299–300 (1970) (termination of welfare benefits). It would be somewhat incongruous to rule that the constitutional principles give a person on parole or probation, one already convicted of a crime, the right to testify, and would relegate the defendant, one guaranteed a constitutional presumption of innocence, to a statutory right to testify.

*Id.* 641 P.2d at 573, n. 31.

Having concluded that a criminal defendant has a statutory (and perhaps constitutional[2]) right to testify in his own behalf, we now turn to the case at bar. The State argues that no error occurred below because appellant waived his right to testify. We believe a close examination of the chronology of events reveals that any waiver was rescinded. Although detailed questioning of appellant preceded appellant's decision not to testify, appellant waived his right to testify *prior* to the court's ruling that his mother's testimony would not be permitted. We think this development altered appellant's decision not to testify. Appellant's statements to the court the next morning confirm our conclusion.

---

**2.** We are mindful, however, of the policy of Maryland courts not to decide constitutional issues unnecessarily, *e.g., State v. Raithel,* 285 Md. 478, 483–84, 404 A.2d 264 (1979), and, therefore, rest our holding on the aforementioned adequate statutory grounds.

The State invites us to analogize the waiver of the right to testify to a defendant's right to withdraw a guilty plea. We are asked to apply the standards used in those cases where reversal is proper, *i.e.,* only where the trial judge abuses his discretion. *See, e.g., Watson v. State,* 17 Md.App. 263, 268, 301 A.2d 26, *cert. denied,* 268 Md. 754 (1973). The State asserts that no abuse of discretion occurred here. We cannot subscribe to this analysis.

▪ Guilty pleas, for example, may be accepted only after a determination that the defendant has an understanding of the nature of the charge and *consequences of the plea.* Maryland Rule 731 c. To waive validly the right to testify, we conclude that the defendant must be aware of who will and who will not testify on his behalf. When appellant initially decided not to testify, there was no reason for him to suspect that his mother's testimony regarding the alleged extortion payments would not be forthcoming. Thus, unlike the entry of a guilty plea, appellant was unaware of the consequences of his decision not to testify when he waived his right.

Moreover, this was not a situation like *Fontana v. State,* 42 Md.App. 203, 399 A.2d 950, *cert. denied,* 285 Md. 729 (1979), where we held that a defendant could not withdraw his guilty plea six weeks after its entry because he was merely "attempting to 'spar' with the Court." *Id.* 42 Md. App. at 209, 399 A.2d 950 (*quoting Cohen v. State,* 235 Md. 62, 200 A.2d 368 (1964)). That decision was not exclusively based on the six-week lapse of time, but rather on the prejudice to the State and inconvenience to the Court. The case had been continued three times at the defendant's request, witnesses had been brought in from out-of-State, requiring Federal protective custody and State law enforcement officers were prepared to participate in the proceedings. We discern no attempt by appellant to "spar with the court" in this case. Rather, we view the appellant as being motivated by an attempt to modify his defense strategy in

light of the trial court's decision to prevent his mother's testimony.

Our reversal of appellant's conviction is based on the trial court's abuse of its discretion in failing to permit appellant to reopen his case in order to testify in his own behalf. The trial judge correctly noted that the decision to permit such action is vested in the trial court's discretion. *Hepple v. State,* 31 Md.App. 525, 358 A.2d 283 (1976) (en banc), *aff'd,* 279 Md. 265, 368 A.2d 445 (1977). A comparison of this case to *Newborn v. State,* 29 Md.App. 85, 349 A.2d 407 (1975), demonstrates that the lower court's actions amounted to an abuse of discretion. In *Newborn,* the State and the defense rested prior to adjournment for lunch on a Friday afternoon. Closing arguments were to commence after the break. Upon reconvening, defense counsel informed the court that during the recess he had received a telephone call from a woman responding to a call made to her by the defendant. In essence, the woman refused to testify, but provided counsel with information which did not relate to the defendant's guilt or innocence but could possibly impeach a prior witness' recollection on a collateral issue. We held that the trial court did not abuse its discretion in denying defendant's request to reopen his case since the defendant could not provide an explanation as to why this information could not have been obtained prior to the last day of the trial, or guarantee that the caller would provide testimony on any important issue.

In this case, we find a defendant asserting his right to testify after both sides had rested. Instead of a mysterious, reluctant witness with testimony on a peripheral matter, appellant was a willing, available witness with testimony relevant to the central issue of his guilt or innocence. Appellant can justifiably explain his delay in asserting his desire to testify.

The facts of *Holifield v. Texas,* 599 S.W.2d 836 (Tex.Cr. App.1980) are strikingly similar to the instant case. Defendant Holifield sought to reopen his case prior to the jury

charge and closing arguments. He had not testified in the defense's case-in-chief. When the court ruled that the issue of self-defense had not been sufficiently raised to warrant a jury instruction, Holifield informed the court he wanted to testify. The State opposed the request to reopen on the grounds that two days would be required to reassemble its witnesses. Importantly, the State offered no evidence that the witnesses were actually unavailable or that granting defendant's motion would impede the trial. Holifield's motion was denied. The Texas Court of Criminal Appeals held that the trial court had abused its discretion because Holifield was prepared to testify, his testimony related to the close issue of self-defense and the State did not show how the testimony would unduly delay the trial.

We fail to see any distinguishing features between *Holifield* and this case. Appellant did not testify during his case-in-chief because his prepared defense depended on his mother's testimony. Appellant stood ready to testify prior to the jury instructions. His testimony related to the critical issue of whether the activities at the George Street Apartments were an armed robbery or a prelude to an extortion scheme. Finally, the State did not proffer that it would have difficulty obtaining the presence of its witnesses (all Baltimore City residents) for possible rebuttal testimony, nor that any prejudice would result from permitting the defendant to reopen his case.

We do not mean to say that on every occasion where a defendant recants his election to remain silent the trial judge must blindly adhere to the whims of a fickle defendant. There may be cases where (after waiver) the assertion of the right to testify is merely an attempt at some subterfuge. On the other hand, situations may arise where, although the recantation is sincere, the length of delay causes undue prejudice to the State or disruption to the orderly process of the trial. There, the court must consider the effects on both the defendant and the State to the end that justice may be served.

In the instant case, justice would have been served by permitting the appellant to reopen his case.

JUDGMENT REVERSED; REMANDED FOR NEW TRIAL; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.