551 A.2d 151

**Gregory McCLOUD**

v.

**STATE of Maryland.**

**No. 413, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 4, 1989.

J. Michael McLaughlin, Jr., Assigned Public Defender, Towson (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Audrey A. Creighton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. Baltimore, and Alexander Williams, Jr.,

State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before MOYLAN, KARWACKI and FISCHER, JJ.

KARWACKI, Judge.

Gregory McCloud, the appellant, was convicted by a jury in the Circuit Court for Prince George's County of second degree rape and storehouse breaking. He was sentenced to 20 years imprisonment for the second degree rape and given a concurrent one year term of incarceration for storehouse breaking. On appeal he raises three issues for our review:

I. Did the evidence show as a matter of law that appellant suffered from a mental disorder and was not responsible for his criminal behavior?

II. Did the court improperly refuse to permit appellant to rebut the State's argument as to the issue of criminal responsibility?

III. Did the court improperly deny appellant the right to testify on his own behalf?

We answer each of these questions in the negative and affirm the judgments entered below.

The facts which led to appellant's prosecution were not disputed at trial and can be briefly recounted. On Sunday, September 22, 1985, the victim was alone in a building on Central Avenue in Capital Heights which she was preparing for use as a children's day care center. Appellant broke into the building and raped her. After the sexual assault, she managed to escape from appellant and sought the assistance of residents of a home in the neighborhood. Appellant was apprehended by those persons as he attempted to flee from the day care center building.

I.

Upon his indictment, appellant pleaded not guilty or not criminally responsible under Health–Gen. Code Ann. § 12–108. In addition, he asserted that he was incompetent

to stand trial under Health–Gen. Code Ann. § 12–101(d). After a hearing on January 24, 1986, the court ordered the Department of Health and Mental Hygiene to evaluate the appellant's criminal responsibility for his acts on September 22, 1985, and to determine whether he was competent to stand trial on the charges pending against him. Appellant remained at the Prince George's County Detention Center where he had been incarcerated since his arrest until August 8, 1986, when he was admitted to Clifton T. Perkins Hospital. He was evaluated by two psychiatrists and a psychologist on the hospital staff. One of the psychiatrists, William N. Fitzpatrick, M.D., and the psychologist were of the opinion that appellant was criminally responsible and was competent to stand trial. The third member of the evaluation team disagreed with both conclusions.

Richard S. Epstein, M.D., a psychiatrist retained by the defense, examined appellant in July of 1986 at the Prince George's County Detention Center. He was of the opinion that appellant was not criminally responsible for his conduct on September 22, 1985, and that he was incompetent to stand trial.

A hearing on the issue of appellant's competency to stand trial was held before Judge G.R. Hovey Johnson on November 12, 1986. Judge Johnson concluded that appellant was not competent to stand trial at that time and ordered that appellant be committed to the Department of Health and Mental Hygiene for in-patient treatment. It was further ordered that appellant's criminal responsibility and competence to stand trial be re-evaluated within the ensuing six month period.

That re-evaluation was conducted at Clifton T. Perkins Hospital between February 2, 1987 and March 2, 1987. Dr. Fitzpatrick, who had examined appellant in August of 1986, was again a member of the evaluation team. He was joined by two psychiatrists who had not previously evaluated the appellant. The evaluation team was unanimous in its opinion that appellant was criminally responsible and presently competent to stand trial. At the request of the defense,

Carol Kleinman, M.D., a psychiatrist, examined appellant on April 3, 1987. At a hearing on April 15, 1987, to resolve the competency issue, Dr. Kleinman agreed with the staff at Clifton T. Perkins Hospital that appellant was capable of understanding the nature and object of the pending proceeding and able to assist in his own defense. Based upon this uncontradicted expert opinion and the testimony of the appellant at the hearing, Judge Robert J. Woods found appellant to be competent.

Trial began on July 20, 1987, before Judge Woods and a jury. The prosecution offered evidence establishing that appellant broke into the day care center building on September 22, 1985, and that he raped the victim. The State then rested its case.

The defense offered no evidence to contradict the State's case. Rather, appellant's defense was limited to the issue of whether he was criminally responsible for his conduct. Appellant's mother testified to her observations of his bizarre behavior prior to September 22, 1985. A member of the staff of the Prince George's County Detention Center recounted her experiences with appellant's eccentric conduct while he was incarcerated at that center prior to trial. The expert testimony to support appellant's defense was given by Dr. Epstein and Dr. Kleinman. Both opined that appellant was suffering from a mental illness on September 22, 1985, and that as a result of that illness appellant lacked the capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law.

The prosecution rebutted that evidence with testimony from Dr. Fitzpatrick. In his opinion appellant was not suffering from a mental illness which excused him from criminal responsibility on September 22, 1985. There was ample evidence to support that opinion. According to the victim, appellant acted and spoke rationally when he confronted her inside the day care center. He indicated his appreciation for the criminality of his conduct by attempting an escape from the scene of the crime. He had enough presence of mind when arrested to protest that he "didn't

rape her" and to ask to see an attorney before making any written statement.

■ Health-Gen. Code Ann. § 12–109(b) (Supp.1988) requires that the accused prove his asserted lack of criminal responsibility by a preponderance of the evidence. *Hoey v. State,* 311 Md. 473, 491, 536 A.2d 622 (1988). The court in the instant case properly submitted the issue to the jury where the evidence material to a resolution of that issue was conflicting. *Bryant v. State,* 49 Md.App. 272, 283–84, 431 A.2d 714, *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982).

## II.

■ Appellant asserts that since he bore the burden of proving his lack of criminal responsibility, he should have been permitted the final closing argument before the jury. We disagree. *Erdman v. State,* 75 Md.App. 560, 579, 542 A.2d 399 (1988), *cert. granted,* 313 Md. 637, 547 A.2d 201 (1988); *Treece v. State,* 72 Md.App. 644, 532 A.2d 175 (1987), *rev'd on other grounds,* 313 Md. 665, 547 A.2d 1054 (1988). As we explained in *Treece:*

> Notwithstanding the allocation to the defendant of the burden of proving lack of criminal responsibility, the State in such cases, as in all criminal cases, carries the ultimate burden of proving guilt beyond a reasonable doubt. *See generally Pouncey v. State,* 297 Md. [264] at 266–68, 465 A.2d 475 [1983]. Indeed, only after having been convinced beyond a reasonable doubt that the accused is guilty of the crimes charged, does the jury need consider the defense of criminal responsibility and enter a special verdict thereon. *Id.* Because the State at all times carries the burden of proving guilt beyond a reasonable doubt, it is entitled to final argument.

*Id.* at 661, 532 A.2d 175.

## III.

When the State's rebuttal witness, Dr. Fitzpatrick, completed his testimony on the third day of trial, the court conferred with counsel and then addressed the jury:

Mr. Foreman and ladies and gentlemen, we have concluded the testimony in the case. As I told you the other day, we will not be able to submit the case to you today, so we'll ask you to come in tomorrow. We'll be ready for instructions and closing arguments we hope at 10:00 o'clock.

The following morning the court delivered its instructions to the jury and then overruled certain exceptions of defense counsel to its charge at a bench conference. As the Assistant State's Attorney began his closing argument to the jury, he was interrupted by defense counsel who asked to approach the bench. At the bench conference the following transpired:

MR. NILAND [Defense Counsel]: Your Honor, I feel that it behooves me to bring this to your attention.

THE COURT: Uh huh.

MR. NILAND: When I just returned to counsel table, Mr. McCloud asked me is he going to be able to get up and say what he thinks happened in this situation and he wasn't there and things of that effect.

THE COURT: Uh huh.

MR. NILAND: Now, yesterday when we were presenting the defense, I discussed with Mr. McCloud the matter of his possible testimony. I explained to Mr. McCloud that he had an absolute right to testify and an absolute right not to testify, depending upon what he personally chose to do, that he was the person, since this was in my view a personal right of his in his criminal trial, he was the one who had the right to make that decision.

THE COURT: Uh huh.

MR. NILAND: It appeared to me that he understood what I was saying. I also explained to him that I felt that the thrust of our defense was the insanity defense or the noncriminal responsibility of the defense and it would detract from that defense. It would not add anything useful to his defense if he testified.

Consequently, it was my opinion and my advice that he not testify. At that time, he stated to me that he felt he

should do what I thought was best and that it was okay, that he would not testify. Of course, we closed our case and he didn't testify.

He is now raising this matter to me. I have seen Mr. McCloud for months, and his state of mind over that months. I think he is in, you know, a rather good controlled state of mind at this juncture. I have and always do have some difficulty in carrying on understandable conversations with him, primarily because of his intellectual level which never gets better, and I do think he understood what I was discussing with him yesterday.

THE COURT: Well, all I can say is the case is now closed and I'm not going to let him testify at this point in time. So, his request to tell his side of the story is denied. Thank you.

Appellant contends that the court impermissibly denied him his right to testify in his own defense. We disagree and explain.

 The right of an accused to present testimony in his own defense of a criminal prosecution is protected by Cts. & Jud.Proc.Code Ann. § 9–101 (1984). *Mayfield v. State,* 56 Md.App. 541, 548–58, 468 A.2d 400 (1983); *State v. McKenzie,* 17 Md.App. 563, 576–77, 303 A.2d 406 (1973). Moreover, the Supreme Court has held that this right of a criminal defendant is fundamental to the due process which an accused is guaranteed by the Fourteenth Amendment of the United States Constitution. *Rock v. Arkansas,* 483 U.S. 44, ——–——, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37, 44–47 (1987). Nevertheless, the right is one which must be exercised in compliance with the established rules of procedure which govern a criminal prosecution. *Id.* at ——, 107 S.Ct. at 2711, 97 L.Ed. at 49; *Mayfield v. State, supra,* 56 Md.App. at 557, 468 A.2d 400. The trial judge has broad discretion in regulating the conduct of a criminal trial. *Smith v. State,* 299 Md. 158, 179, 472 A.2d 988 (1984). Accordingly, a request by an accused, who has elected not to testify and closed his case, to re-open his case for the

purpose of giving testimony in his own defense may be denied by the court in a sound exercise of its discretion.

■ In asserting that the court in the instant case abused its discretion appellant relies upon *Mayfield v. State, supra.* We think that reliance is misplaced. In *Mayfield* we held that the trial judge abused his discretion in refusing to permit a defendant who had waived his right to testify to re-open his case and give testimony in his defense. There, the defendant elected not to testify because his defense depended on testimony which he would proffer through the testimony of his mother, who was to be the last witness for the defense. When the trial judge ruled that her testimony was inadmissible the defendant sought to rescind his previous waiver. Importantly, his request was made prior to the jury being instructed on the law which they were to apply to the evidence offered at trial and prior to the closing arguments of counsel. In the case *sub judice,* on the other hand, appellant had offered no evidence in his case-in-chief to contradict the State's evidence of his guilt of the crimes with which he had been charged. The jurors had been advised at the time they were excused on the previous afternoon that the testimony in the case was concluded and that they would be instructed and hear argument from counsel before retiring to consider their verdict the next day. Appellant's request to re-open his case after the jury was instructed and the prosecutor had launched into his closing argument was simply untimely. Granting appellant's request would have seriously disrupted the orderly progress of his trial. The trial judge did not abuse his discretion when he refused to permit appellant to testify at that time.

■ Finally, appellant suggests that he was never advised of his right to testify by his trial counsel, implies that he was unaware of that right, and asserts that he never waived that right. Those issues were not presented to the trial judge and we are in no position to evaluate them. Rule 8–131(a). Being a claim of ineffectiveness of the

537

assistance rendered by trial counsel, it is more appropriately the subject of a post conviction proceeding pursuant to Md.Code Ann., Art. 27, § 645A *et seq. Cf. State v. McKenzie, supra,* 17 Md.App. at 566–71, 303 A.2d 406.

JUDGMENTS AFFIRMED;
COSTS TO BE PAID BY THE APPELLANT.