Roy M. BLOOMQUIST, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3396.

Court of Appeals of Alaska.

May 15, 1992.

Roy M. Bloomquist, pro se.

Susan Orlansky, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Shelley K. Chaffin, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

## OPINION

COATS, Judge.

Roy M. Bloomquist was convicted, following a jury trial, of assault in the third degree, a class C felony, and criminal trespass in the second degree, a class B misdemeanor. AS 11.41.220(a)(1); AS 11.46.-330(a)(1). Acting Superior Court Judge David C. Stewart sentenced Bloomquist to an aggregate prison term of forty-two months with thirty-six months suspended. Judge Stewart also ordered that Bloomquist be placed on probation for a period of five years following his release from confinement. Bloomquist appeals, raising several issues. We remand to the trial court for further proceedings, retaining jurisdiction of the case.

On the evening of July 13, 1989, Bloomquist, his wife Debra Bloomquist, and their friend Lorna Betts met at Alyeska Resort in Girdwood, Alaska, where Betts and Debra Bloomquist worked. Betts told the Bloomquists that she had seen a winch in the yard of Lucille and Gary Hotchkiss. Roy Bloomquist suspected Gary Hotchkiss of having stolen Bloomquist's winch a year earlier, and Betts' description of the winch she had seen seemed to confirm Bloomquist's suspicions. Bloomquist became "sort of excited" and wanted to retrieve the winch that night. Bloomquist visited the residence of Trooper Michael Opalka to enlist his aid, but he found no one at home. The Bloomquists and Betts then drove in separate vehicles to the Hotchkiss residence.

Although they arrived at around midnight, there was still light outside. Where Betts had earlier seen a winch, they now found only an indentation in the grass. Bloomquist knocked on the door of the Hotchkiss residence. Sixteen-year-old Adrian Hotchkiss answered the door and told Bloomquist his father was asleep. Bloomquist insisted on speaking with Gary Hotchkiss and remained at the door until the adult Hotchkisses awakened. Bloomquist demanded his winch, and the Hotchkisses denied having it. The Hotchkisses told Betts that the winch she had seen had belonged to Gary Hotchkiss' brother.

Gary Hotchkiss left the house and backed Bloomquist away from the house and toward Bloomquist's van, motioning with his hands and shouting at Bloomquist to leave Hotchkiss' property. Lucille and Gary Hotchkiss testified that Gary Hotchkiss was not touching or pushing Bloomquist, but Lorna Betts testified that Hotchkiss was pushing and striking Bloomquist with his fists, and Debra Bloomquist testified that Hotchkiss was pushing and swinging at Bloomquist without the punches connecting. When Bloomquist reached his van, he pulled out a wooden club and

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

struck Hotchkiss over the head. The witnesses differed over whether Hotchkiss fell to the ground, but all agreed Hotchkiss was bleeding as a result.

Bloomquist then retrieved a rifle from his van. Lucille and Gary Hotchkiss testified that Bloomquist pointed the rifle at Gary Hotchkiss and that Debra Bloomquist interposed herself between the gun and Hotchkiss, saying "Don't shoot him"; Betts and Debra Bloomquist testified that Hotchkiss called for Adrian Hotchkiss to get his gun, that Bloomquist did not point his rifle at anyone, and that Debra Bloomquist never urged him not to shoot.

The Hotchkisses returned to their house, and the Bloomquists remained outside to search for Roy Bloomquist's glasses, which had come off during the struggle. Bloomquist then drove away in his van. Betts and Debra Bloomquist talked with the Hotchkisses about the winch for fifteen minutes before leaving.

A grand jury indicted Bloomquist for two counts of assault in the third degree and one count of criminal trespass in the second degree. The first assault count was for causing physical injury to Hotchkiss by striking him with the club, and the second count was for placing Hotchkiss in fear of serious physical injury by pointing the rifle in his direction. AS 11.41.220(a)(2); AS 11.41.220(a)(1).

The jury acquitted Bloomquist of the first assault count, apparently accepting Bloomquist's argument that he struck Hotchkiss with the club in self-defense. The jury convicted Bloomquist of the second assault count and the criminal trespass count.

Bloomquist first contends that Judge Stewart erred in denying Bloomquist's request to reopen the evidence so that he could testify on his own behalf.

After Debra Bloomquist had finished testifying, Bloomquist sought and received a brief recess to determine whether there would be additional defense witnesses. After the break, Bloomquist's counsel informed the court that he and Bloomquist had discussed Bloomquist's testimony and had mutually decided that Bloomquist would not take the stand. Judge Stewart stated, "That's fine. It is your decision, Mr. Bloomquist, whether you want to [testify]. And obviously your attorney is available for giving you advice on whether to testify, and it is your choice, not [defense counsel's] choice whether you should testify." Bloomquist answered, "That's correct." Bloomquist then rested his case. The state presented two rebuttal witnesses, who testified regarding the credibility of Betts and Lucille Hotchkiss, and rested. Judge Stewart then informed the jury that it had heard all the evidence, that, after another break, it would hear closing arguments and jury instructions, and that the court would then submit the case to the jury for its decision.

The parties and the court then discussed jury instructions. During this same break, defense counsel notified the court that, against counsel's advice, Bloomquist was moving to reopen the evidence so that he could testify on his own behalf. Judge Stewart denied the motion, finding that Bloomquist had voluntarily waived his right to testify. After the break, before closing arguments that same day, Bloomquist moved the court to reconsider its decision not to allow him to reopen his case and testify. Judge Stewart denied the motion. In denying Bloomquist's request, Judge Stewart found that Bloomquist had personally waived his right to testify after having a full opportunity to consult with his attorney.

"The constitutional right to testify [at trial] is both personal to the criminal defendant and fundamental to the dignity and fairness of the judicial process." *LaVigne v. State*, 812 P.2d 217, 219 (Alaska 1991) (citations omitted). Bloomquist does not contend his waiver of the right to testify was invalid or involuntary. Instead, Bloomquist argues that Judge Stewart abused his discretion in refusing to allow Bloomquist to reopen his case after he changed his mind about whether to testify.

The major case which Bloomquist relies on is *United States v. Walker*, 772 F.2d 1172 (5th Cir.1985). In *Walker*, the defendant informed the court he was under too

much emotional pressure to testify "right now" or "today." Defendant then rested his case that day, a Friday, and the state called two "apparently insignificant" rebuttal witnesses and closed. The following Monday, before closing arguments, defendant moved to reopen his case so he could testify, and the trial court denied the motion. *Id.* at 1175–76, 1181.

The appellate court noted that the reopening of a criminal case was within the sound discretion of the trial court. However, the court set out the following factors for the trial court to consider:

> "In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not 'imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.'"

*Id.* at 1177 (quoting *United States v. Thetford*, 676 F.2d 170, 182 (5th Cir.1982) (quoting *United States v. Larson*, 596 F.2d 759, 778 (8th Cir.1979)), *cert. denied*, 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983)).

The *Walker* court held that the trial court had abused its discretion. The appellate court concluded that the defendant's untimeliness was minor under the circumstances, because, had defendant elected to take the stand on Friday, the testimony would likely have carried over into Monday morning anyway. The court stated that the character of the proffered evidence weighed very heavily in favor of defendant, because it was the testimony of a criminal defendant who had not previously taken the stand in his own trial. The court concluded that the record did not show that the effect of granting defendant's motion

would have prejudiced the state's case. Finally, the court concluded that the reasonableness of defendant's excuse of emotional inability to testify on Friday "mildly favor[ed]" defendant's position, as it was "apparently bona fide and not significantly unreasonable," as opposed to a desire to "delay the proceedings" or "gain a strategic advantage over the government." *Walker*, 772 F.2d at 1177–85. Similarly, in *People v. Johnson*, 151 Ill.App.3d 1049, 105 Ill.Dec. 309, 312, 504 N.E.2d 178, 181, *appeal denied*, 115 Ill.2d 546, 110 Ill.Dec. 461, 511 N.E.2d 433 (1987) and *Mayfield v. State*, 56 Md.App. 541, 468 A.2d 400, 409–10 (1983), appellate courts have found that trial courts have abused their discretion where the trial courts have denied defendants who have rested their cases the right to reopen their case to testify.

The state argues that a defendant must demonstrate injustice or prejudice from the omission of the proffered evidence in order to show that the trial court abused its discretion in not reopening the case. *See State v. Hie*, 22 Conn.App. 1, 575 A.2d 265, 266 (1990); *Blankenship v. Commonwealth*, 740 S.W.2d 164, 168 (Ky.App.1987); *State v. Baker*, 785 S.W.2d 132, 136 (Tenn. Crim.App.1989); *Gray v. State*, 797 S.W.2d 157, 160 (Tex.App.1990). However, none of these cases involves a defendant who has not testified at all and moves to reopen the case in order to testify.

■ Where the defendant moves to reopen his case to testify on his own behalf, we believe that the standards which the Fifth Circuit set out in *United States v. Walker* are appropriate for resolving this issue. Those factors are: 1) the timeliness of the motion; 2) the character and importance of the testimony the party desires to present; 3) the effect of granting the motion, particularly any prejudice to the state's case; and 4) the reasonableness of the grounds asserted for the request to reopen the evidence, as contrasted with evidence that the defendant's motion was motivated by a desire to "delay the proceedings" or to "gain a strategic advantage over the government." *Id.* at 1177–85.

 From the record, it appears that Judge Stewart's decision denying Bloomquist's motion to reopen the case so that he could testify was based on Judge Stewart's conclusion that Bloomquist had already waived his right to testify. This was simply not a sufficient reason to justify denying Bloomquist's motion.

Bloomquist never made any showing concerning the nature of the testimony he proposed to give. However, Bloomquist points out that since Judge Stewart denied his motion to reopen the case on the ground that Bloomquist had waived his right to testify, he never had an opportunity to establish what he would have said if he had been allowed to testify at his trial. Bloomquist suggests that we remand the case to allow him to make an offer of proof as to what his testimony would have been. We believe that this is appropriate. We accordingly remand the case to allow Bloomquist to make an offer of proof. After he has done so, the court should allow the parties to establish and argue the factors which the court applied in *United States v. Walker*. Based upon the *Walker* factors, the superior court shall determine whether the court should have reopened the case to allow Bloomquist to testify at his trial. The trial court shall make written findings. This court will retain jurisdiction.

 Bloomquist raises another issue which we will deal with summarily at this time. Bloomquist contends that Judge Stewart erred in failing to suppress statements which he made to a state trooper. Bloomquist contends that his taped statement to Trooper Opalka should have been suppressed because it was involuntary and was not recorded properly. The issues in a suppression motion involve mixed questions of law and fact; this court will accept the trial court's factual findings unless they are clearly erroneous and will independently determine whether a confession was voluntary. *Tagala v. State*, 812 P.2d 604, 607 (Alaska App.1991). We find that Judge Stewart's findings are supported by the record and find that Bloomquist's statements were voluntary and that the state did not obtain the statements in violation of

either Bloomquist's *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966), or the recording requirements set forth by the Alaska Supreme Court in *Stephan v. State*, 711 P.2d 1156, 1162 (Alaska 1985) (basing holding upon state Constitution).

The case is REMANDED.

MANNHEIMER, J., not participating.